**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MICHAEL THOMPSON**                                                              **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO.3:14cv274K-NBB-
SAA**

**CALVIN HAMP, in his individual capacity;
JAMES JONES, in his individual capacity; and
UNKNOWN DEFENDANTS
"A", "B", and "C"**                                              **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS COMBINED MOTION IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS DEFEENDANT HAMP [Doc. 16]
and DEFENDANT JONES [Doc. 18]**

---

## I.  ISSUES PRESENTED

**a.** The Fifth Circuit has held that conduct by law enforcement so outrageous that it shocks the conscience violates a citizen's Fourth Amendment right to substantive due process. The Defendants conspired to entrap and arrest the Plaintiff because he reduced the Sheriff's budget as County Administrator. When law enforcement conspires to entrap and arrest a citizen for malicious purposes, rather than for public safety, should this be considered outrageous enough to violate the Fourth Amendment right to substantive due process?

**b.** Did the Plaintiff plead or produce sufficient facts to show the Defendants conspired to arrest him as a result of confrontations over the Plaintiff's reductions to the Sheriff's budget?

**c.** Does MTCA apply or immunize the Defendants from liability when they maliciously conspired to entrap and arrest the Plaintiff because of his decisions in regards to the Sheriff's budget?

1

## II. FACTUAL BACKGROUND

In our around December 2, 2013, Michael Thompson was appointed County Administrator for Tunica County, Mississippi.[1] Tunica County had a significant budget shortfall from declining revenue at the time of Mr. Thompson's appointment.[2] Because of the budget shortfall, Mr. Thompson implemented a spending freeze for the county and required his office to approve all county purchases in January of 2014.[3] After Mr. Thompson implemented the spending freeze, the Sheriff of Tunica County, Calvin Hamp, confronted him about whether Mr. Thompson had the legal authority to freeze the sheriff's budget.[4] During the confrontation, Sheriff Hamp became hostile and angry at him. [5]

On January 30, 2014, Mr. Thompson had to implement further financial measures to address the shortfall caused by the significant decline in gaming revenue.[6] These measures included a ten percent budget cut across all county departments, including the sheriff's budget.[7] After this budget cut, Sheriff Hamp confronted Mr. Thompson again about his strong displeasure with the cut and aggressively questioned Mr. Thompson's authority over his budget.[8] On or around February 10, 2014, Sheriff Hamp came into Mr. Thompson's office for Mr.

---

[1] See Ex. 1, Michael Thompson Affidavit, ¶1.
[2] Id.
[3] Id.
[4] Id. at ¶2.
[5] Id.
[6] Id.
[7] Id.
[8] Id.

2

Thompson to sign off on a purchase order.[9] During the request, Sheriff Hamp became very confrontational and aggressive towards Mr. Thompson.[10] He even threatened and used vulgar language towards him.[11]

Shortly after this confrontation, the Tunica County Sheriff's office started an investigation into the business dealings of Mr. Thompson and the County Comptroller, Alex Wiley.[12] During this investigation, Captain James Jones and Sheriff Hamp learned that Mr. Thompson's license was suspended.[13] Shortly after learning about the suspension, Captain Jones alleged that he coincidentally observed Mr. Wiley swerving on the highway.[14] Even though he was the captain of special operations and training, Captain Jones initiated a traffic stop of Mr. Wiley in an unmarked vehicle.[15] Captain Jones admitted that Agent Michael Strickland was present for the initial stop of Mr. Wiley.[16] Even though Captain Jones allegedly stopped Mr. Wiley for improper driving, he admitted he did not give Mr. Wiley any traffic citations.[17]

Captain Jones claimed that he when he checked the status of Mr. Wiley's license that it came back valid, eligible for reinstatement.[18] While waiting to

---

[9] Id. at ¶3.
[10] Id.
[11] Id.
[12] Ex. 2, Transcript of July 18, 2014 Justice Court hearing, pg. 24, lns. 11-20.
[13] Id. at pgs. 30; 50.
[14] Id. at pg. 5.
[15] Id. at pgs. 16-18.
[16] Id. at pg. 26.
[17] Id. at pgs. 19-20.
[18] Id. at pg. 6.

3

hear back from Dispatch about the meaning of this status, Captain Jones claimed that he asked Mr. Thompson whether he had a license and whether they were valid.[19] He claimed Mr. Thompson told him yes and then Captain Jones admitted that he told Mr. Thompson that he needed to drive the vehicle.[20] At the time Captain Jones asked Mr. Thompson to drive the vehicle, he knew Mr. Thompson's license was suspended.[21] According to Captain Jones, he let Mr. Thompson drive Mr. Wiley's vehicle for a few miles and then pulled him over because he had a suspicion that Mr. Thompson had been deceptive when he told him that his license was valid.[22] He then ran Mr. Thompson's license and confirmed that Mr. Thompson's license was suspended and arrested him for driving with a suspended license.[23]

As difficult as it is to even believe Captain Jones's story that his arrest of Mr. Thompson was a coincidence, Mr. Thompson's account of what occurred further demonstrates the Defendants' conspiracy. Mr. Thompson swears Mr. Wiley was not driving carelessly when he was stopped by Captain Jones.[24] At the time of the stop, Mr. Thompson did not know his license was suspended because he had forgotten about the traffic ticket in Montgomery County.[25] He

---

[19] Id. at pg. 7.
[20] Id.
[21] Id. at pgs. 30-31.
[22] Id. at pg. 24-29.
[23] Id. at pg. 32.
[24] Ex. 1, ¶4.
[25] Id.

4

also swears that Captain Jones did not tell him that he knew his license was suspended when he told him to drive.[26]

To make Captain Jones's story even less credible, Agent Michael Strickland says that around noon on February 12, 2014, Captain Jones told him that he was waiting to pull over a specific vehicle and that he was going to call him later about stopping the vehicle.[27] He says Captain Jones was across the street from Mr. Thompson's office when Captain Jones told him this.[28] Agent Strickland also recalls that around 6pm he received a call from Captain Jones that he was heading north because he was following the car he had been waiting to stop and that Captain Jones asked him to join the stop.[29] Based on his previous conversation with Captain Jones, Agent Strickland is certain that Captain Jones had a plan to pull Michael Thompson over and arrest him for driving with a suspended license prior to seeing Mr. Wiley drive his vehicle that day.[30]

Mr. Thompson was found not guilty of driving with a suspended driver's license on November 10th, 2015.[31] He sent a notice of claim letter on August 5, 2014 and received an acknowledgement of receipt on August 8, 2014. [32]

---

[26] Id.
[27] Ex. 3, Michael Strickland Affidavit, ¶3-4.
[28] Id.
[29] Id. at ¶5-6.
[30] Id. at ¶8.
[31] See Ex. 4, Judgment in Thompson v. State of Mississippi.
[32] See Ex. 5, August 8, 2014 Tunica County Acknowledgement of Receipt.

### III. STANDARD OF REVIEW

The Defendants ask the Court to dismiss the Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(6) and 56(c). The standard for Rule 12(b)(6) is whether the complaint states a valid claim for relief when viewed in the light most favorable to the Plaintiff.[33] Therefore, to survive a Rule 12(b)(6) motion to dismiss, the Plaintiff is only required to have plead facts sufficient to "state a claim for relief that is plausible on its face."[34] In the Fifth Circuit, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] This does not mean the Court should accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[36] Rather, legal conclusions must be supported by factual allegations.[37] The reviewing court must also "resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[38]

Should the Court find the pleadings sufficient to survive Rule 12(b)(6) or find it necessary to go beyond the pleadings, the Defendants also ask the Court to grant them summary judgment pursuant to Rule 56(c). It is well established

---

[33] Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (quoting Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008)).
[34] Gentilello, 627 F.3d at 544 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
[35] Gentilello, 627 F.3d at 544.
[36] Id. (quoting Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir.2005)).
[37] Gentilello, 627 F.3d at 544 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

6

that summary judgment is only appropriate "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[39] On a motion for summary judgment, the movant has the initial burden of showing there is no genuine issue of material fact.[40] Rule 56(e) then shifts the burden to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.[41] This means the non-movant properly defeats a motion for summary judgment if he or she makes a showing of genuine factual issues over the elements essential to that party's case, and on which the party will bear the burden at trial.[42] In considering a motion for summary judgment, the Court must consider the evidence in the light most favorable to the non-movant, even if a party raises the defense of qualified immunity.[43]

## IV. ARGUMENT

    **a.** <u>The Defendants' conspiracy to entrap and arrest the Plaintiff for malicious reasons violated his Fourth Amendment substantive due process rights.</u>

---

[38] <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir.1993).

[39] <u>See</u> Fed. R. Civ. P. 56(c).

[40] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

[41] See Fed. Civ. P. 56(e); <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998)(saying "once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate").

[42] <u>Celotex Corp.</u>, 477 U.S. at 322.

[43] <u>Tolan v. Cotton</u>, 134 S.Ct. 1861, 1865 (2014).

The Defendants claim they are entitled to dismissal of the Plaintiff's Fourth Amendment claim because the Fifth Circuit has stated that entrapment is not a constitutional violation. The Defendants rely heavily on <u>Stokes v. Gann</u>[44] and cases from other Circuits to support this argument. This case is different than <u>Stokes</u> and the cases from other Circuits for two primary reasons.

First, in those cases there was no dispute that the arrest of the citizen was motivated by concerns for public safety, even if the law enforcement agent allegedly entrapped the person.[45] Here, the Plaintiff has direct evidence and strong circumstantial evidence that his entrapment and arrest were solely motivated by a personal vendetta Sheriff Hamp had against him because of his reduction of the sheriff's budget. Mr. Thompson is the county administrator and had to make several budgetary decisions that upset the Sheriff. On February 10, 2015, the Sheriff and Mr. Thompson had a confrontation where the Sheriff threatened him and Mr. Thompson had to tell the Sheriff to leave his office. Two days later, Captain Jones and the Sheriff both found out that Mr. Thompson's license was suspended and then Captain Jones told Mr. Thompson to drive after

---

[44] 498 F.3d 483 (5th Cir. 2007).

[45] <u>See</u> <u>Stokes v. Gann</u>, 498 F.3d 483, 484 (5th Cir. 2007)(an employee of the MS Dept of Wildlife, Fisheries, and Parks launched an undercover sting operation after hearing that a co-worker of the Plaintiff had engaged in illegal deer hunting); <u>Smith v. Lang</u>, 114 F.3d 1192 (7th Cir. 1997)(a confidential informant convinced the Plaintiff to sell him illegal drugs after he was pressured by a police officer to provide useful information about suspected drug dealers); <u>DiBlasio v. City of New York</u>, 102 F.3d 654, 656 (2nd Cir. 1996)(the Plaintiff's drug dealer convinced him to sell cocaine to undercover police officers on several occasions); <u>Stevenson v. Bales</u>, 986 F.2d 1429 (10th Cir. 1993)(Plaintiff alleged that his probation officer's threat that if he reported to probation he would be arrested for escaping from jail constituted entrapment); <u>Jones v.</u>

he alleged there was an "issue" with Mr. Wiley's license. Deputy Strickland, however, admitted that Captain Jones told him he had been planning to stop a particular vehicle earlier in the day and that he told him he had found the vehicle he needed to stop right before he stopped Mr. Wiley's vehicle and told Mr. Thompson to drive.

Also, the type of crime Mr. Thompson was entrapped into committing is important to note. All of the plaintiffs in the cases cited in Defendants' brief were in the minimum heavily involved in serious criminal activity. Here, Mr. Thompson was not engaged in serious criminal behavior. To the contrary, like many law abiding citizens across the country, Mr. Thompson forget about a traffic ticket and unbeknownst to him his license was suspended as a result. This is certainly not the type of offense law enforcement entraps people into committing, which further shows the Defendants were not motivated by public safety concerns, but, instead, improperly used their law enforcement powers to settle a personal vendetta against Mr. Thompson over his budgetary decisions.

Second, the Defendants failed to mention that the Stokes Court also said that "there may be a substantive due process violation where 'the conduct of law enforcement agents is so outrageous that due process principle would absolutely bar the government from invoking judicial processes to obtain a

---

Bombeck, 375 F.2d 737 (3rd Cir. 1967)(Plaintiff claimed the defendants induced him to commit and participate in a burglary).

conviction.'"[46] The Court further said that "[d]eprivations of liberty caused by 'the most egregious official conduct' may violate the Due Process Clause."[47] The Supreme Court recognized the shocks the conscience standard in <u>Rochin v. California</u>, 342 U.S. 165 (1952), where the Court held that it violated a person's substantive due process rights for police officers to order doctors to pump his stomach to induce him to vomit two capsules of morphine he had previously swallowed.[48] The Supreme Court has also characterized conduct sufficient to shock the conscience as conduct that "violates the decencies of civilized conduct" or that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency."[49] The shock the conscience standard has been most commonly applied to unlawful actions by law enforcement.[50]

The facts in the cases where Courts have found police conduct to "shock the conscience" follow a similar pattern. They are all cases where law enforcement used their legal authority for malicious purposes. For instance, in <u>Checki v. Webb</u>, in reversing a grant of dismissal by a District Court, the Fifth

---

[46] <u>Stokes v. Gann</u>, 498 F.3d at 485 (citing <u>United States v. Russell</u>, 411 U.S. 423, 431-32 (1973)).

[47] <u>Stokes</u>, 498 F.3d at 485 (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846-48 (1998)).

[48] <u>Rochin</u>, 342 U.S. at 166.

[49] <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846-847 n.8 (1998)

[50] <u>See</u> <u>Checki v. Webb</u>, 785 F.2d 534, 535-36 (5th Cir. 1986)(police officer intentionally struck tourist because he was photographing the police officer and fellow officers apprehending a boy on the street during a Mardi Gras parade), abrogated on other grounds by <u>Valencia v. Wiggins</u>, 981 F.2d 1440 (5th Cir. 1993); <u>See also</u> <u>Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.</u>, 229 F.3d 1069, 1071, 1075-76 (11th Cir. 2000); <u>Rogers v. City of Little Rock, Ark.</u>, 152 F.3d 790, 797 (8th Cir. 1998)(rape of a woman at her house by a police officer after

Circuit pointed that if the police officers' actions were "inspired by malice rather than merely careless or unwise excess of zeal" than a jury could determine that "it amounted to an abuse of official power that shocks the conscience."[51] Even more importantly, the Supreme Court has explained that substantive due process protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."[52] In other words, "conduct that is 'intended to injure in some way unjustifiable by any governmental interest' is likely to be conscience shocking."[53]

Applying this test to the present facts, there is no dispute that the Defendants conduct shocks the conscience whether the court views it pursuant to the Rule 12(b)(6) standard or the summary judgment standard. Both the complaint and additional evidence demonstrate that the Defendants entrapped and arrested the Plaintiff because he reduced their budget, not because he had a suspended driver's license. This certainly qualifies as malice, and it certainly does not serve a justifiable government interest. Indeed, the state's inability to entrap and arrest citizens for such malicious purposes is one of the important differences between the United States and tyrannical governments across the world.

---

he stopped her for a traffic violation); Hemphill v. Schott, 141 F.3d 412, 418-19 (2d Cir. 1998)(police officer provided assistance to a third party in shooting the plaintiff).
[51] 785 F.2d at 535-36.
[52] Lewis, 523 U.S. at 846.
[53] Rogers v. City of Little Rock, Ark., 152 F.3d at 797 (quoting Lewis, 523 U.S. at 849).

The Defendants motion for dismissal relies solely on the argument that they are entitled to qualified immunity since there was no constitutional violation in the Plaintiff's entrapment. To the extent the Court also considers whether the Defendants conduct was objectively unreasonable in light of clearly established law, than the Plaintiff's complaint satisfies this test as well. The aforementioned body of law on the shock the conscience doctrine clearly establishes that law enforcement cannot use their legal authority for malicious purposes. Indeed, it would be ludicrous for the Defendants to argue that they objectively believed the United States Constitution allows police officers to entrap and arrest citizens to get revenge about budget cuts or to send a vindictive message, just as it was unreasonable for a police officer to believe he could rape a woman or provide assistance to a third party in shooting someone. Thankfully, the United States Constitution has established that this type of malicious abuse of power by government actors is unconstitutional since our Country's founding.

In sum, the Plaintiff's complaint is not a normal allegation of entrapment. The Defendants were not overzealous police officers attempting to fight crime. Sheriff Hamp had a strong disagreement with Mr. Thompson about his budget and decided to use his power as Sheriff to entrap and arrest Mr. Thompson as revenge. This is the type of malicious conduct that shocks the conscience and clearly and objectively violates the Fourth Amendment. Therefore, the Defendants' motion to dismiss must be denied.

12

**b.** The Plaintiff's complaint pleaded sufficient facts to show a conspiracy to deprive him of his constitutional rights.

The Defendant also asks for summary judgment on Plaintiff's conspiracy claim. They argue that the Plaintiff's amended complaint fails to plead enough specific facts to show they conspired to violate his constitutional rights, but rather rely on conclusory allegations. This argument, however, is without merit. The Plaintiff's complaint detailed the motive for the conspiracy: the Sheriff was upset with the Plaintiff's budgetary decisions. The complaint explained how this caused the sheriff to start an investigation into the Plaintiff. The Sheriff's deputy, Defendant Jones, admitted as much.

The complaint then alleged that the Defendants met to discuss a conspiracy to arrest the Plaintiff for driving with a suspended license. The Defendants complain that the Plaintiff does not name the date, time and place for this meeting. Of course, without discovery, the Plaintiff is not required to have those details to state a valid claim. Suffice to say, as previously detailed, the subsequent actions of the Defendants show that there was a conspiracy for Captain Jones to entrap and arrest Mr. Thompson for driving with a suspended license for malicious purposes.

The Defendants also argue that the conspiracy cannot stand because there was no constitutional violation. Again, as previously explained, the

13

Defendants malicious entrapment and arrest of Mr. Thompson violated his Fourth Amendment right to substantive due process. For these reasons, the Plaintiff's conspiracy claim should not be dismissed.

**c.** <u>The Plaintiff has provided sufficient evidence to show his entrapment and arrest were the result of rights protected by the First Amendment. Therefore, his First Amendment retaliation claim should not be dismissed</u>.

Next, the Defendants ask for dismissal of the Plaintiff's First Amendment retaliation claim. They argue that the motivation for the Plaintiff's arrest does not matter if there was probable cause for it. They cite <u>Mesa v. Prejean</u>[54] to support this argument. This argument, however, misunderstands the holding in <u>Mesa</u>. In <u>Mesa</u>, the Court reversed a District Court's grant of summary judgment on a First Amendment retaliation claim. In doing so, the Court noted that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[55] The Court also noted that in <u>Enlow</u> the Fifth Circuit reversed a grant of summary judgment when there was a dispute over "whether an officer arrested the plaintiff because of violating a statute or because the plaintiff asked the officer to furnish a warrant."[56] This statement illustrates that the Court recognized that the motivation for the arrest is certainly relevant in determining whether it violated a person's First Amendment rights.

---

[54] 543 F.3d 264 (5th Cir. 2008).
[55] 543 F.3d at 273 (quoting <u>Enlow v. Tishonmingo County</u>, 962 F.2d 501, 509 (5th Cir. 1992).
[56] <u>Mesa</u>, at 273 (citing <u>Enlow</u>, 962 F.3d at 273).

14

Nevertheless, the Court also made clear that criminal defendants cannot use alleged First Amendment speech to challenge otherwise valid arrests. The Court said "when a person's conduct gives an officer probable cause to believe that she is guilty of a crime, that person does not taint a proper arrest by contemporaneously shouting 'police officers are corrupt.'"[57] This statement simply recognized that there is a difference between an arrest motivated by First Amendment retaliation and one where a criminal suspect makes negative statements to a police officer doing an otherwise valid arrest. This case fits into the first category of cases. The pleading and the evidence shows the Defendants entrapped and arrest the Plaintiff as revenge for statements he made to the sheriff about his budget. The First Amendment does not allow police officers to use their legal authority to retaliate against citizens for speech they do not like. Indeed, as the Court said in <u>Mesa</u>, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[58] For these reasons, the Defendants' motion to dismiss the Plaintiff's First Amendment claim should be denied.

      **d.** <u>The Defendants are not entitled to immunity from the Plaintiff's state law claims under the Mississippi Tort Claim Act.</u>

---

[57] <u>Mesa</u>, at 273.
[58] <u>Mesa</u>, at 273 (quoting <u>City of Houston v. Hill</u>, 482 U.S. 462-63 (1987).

Finally, the Defendants also ask for dismissal of the Plaintiff's state law claims on the grounds that they are barred under the Mississippi Tort Claim Act. This argument fails for two reasons. First, as the Northern District Court in Mississippi recently held in <u>Papagolos v. Lafayette County Sch. Dist.</u>, the Mississippi Tort Claims Act does not apply to allegations of malicious conduct.[59] Here, the Plaintiff alleges the Defendants maliciously entrapped and arrested him because he reduced the sheriff's budget. This conduct is expressly considered outside the scope of employment and exempted from MTCA pursuant to § 11-46-5.

Moreover, even if MTCA applied, none of the immunity exceptions apply. Conspiring to arrest someone as revenge for budget cuts is not an administration of the law, the exercise of ordinary care in exercising legal authority, or a duty or activity related to police protection; therefore, neither §11-46-9(1)(a),(b), or (c) immunize the Defendant's malicious conduct. Also, it is not within the Sheriff or the Captain's discretion to unconstitutionally entrap and arrest someone for malicious purposes and the Plaintiff's claims are not based on his detention. Accordingly, subsections (d) and (m) of §11-46-9 are also not applicable.

---

[59] 972 F.Supp.2d 912, 933 (N.D. Miss. 2013)(stating that the "[t]he law is also clear that when a plaintiff alleges a state employee acted with malice, the plaintiff is alleging that the state employee acted outside the scope of his employment, and the state employee is therefore subject to personal liability).

16

The Defendants also briefly mentioned the statue of limitations as a defense to liability for the Plaintiff's claims. Yet, the statute of limitations was tolled until Mr. Thompson was found not guilty of driving with a suspended license on November 10, 2015.

## V. CONCLUSION

For the aforementioned reasons, Defendant Hamp and Defendant Jones's motion for dismissal should be denied.

This the 14th day of April, 2015.

RESPECTFULLY SUBMITTED,
MICHAEL THOMPSON, PLAINTIFF

/s/ Scott W. Colom
_____
Scott W. Colom (MSB #6403)

WILBUR O. COLOM (MSB# 6403)
SCOTT W. COLOM (MSB#103168)
**THE COLOM LAW FIRM, LLC**
**200 6th STREET NORTH, SUITE 700**
**COLUMBUS, MS  39703-0866**
**TELEPHONE: (662) 327-0903**
**FACSIMILE: (662) 329-4832**
wil@colom.com
scott@colom.com

**<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that I have this day served via electronic filing and/or

U.S. Mail, postage prepaid, a true and correct copy of the foregoing to:

MICHAEL J. WOLF – MSB # 99406
KEN WALLEY- MSB #103179
PAGE, KRUGER & HOLLAND, P.A.
P.O. Box 1163
Jackson, Mississippi 39215-1163
T: 601-420-0333
F: 601-420-0033
Email: mwolf@pagekruger.com

This the 14th day of April, 2015.

BY:      /s/ Scott W. Colom
         _____
         Scott W. Colom (MSB #103168)

18