IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MICHAEL THOMPSON                                                                    PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:14cv274-NBB-SAA

CALVIN HAMP, in his individual capacity and
in his official capacity as sheriff of Tunica County, MS,
JAMES JONES, in his individual capacity and
in his official capacity as a captain in Tunica
County's sheriff's office, and UNKNOWN
DEFENDANTS "A", "B" AND "C"                                                      DEFENDANTS

**DEFENDANTS' COMBINED REPLY TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS COMBINED MOTION IN OPPOSTION TO DEFENDANT'S MOTION TO DISMISS DEFENDANT HAMP [16] AND DEFENDANT JONES [18]**

COMES NOW the Defendants Calvin Hamp and James Jones, through counsel and provide to this Court a Reply to the Plaintiff's Combined Opposition to the Motions for Qualified Immunity, to wit:

**a. The Plaintiff Is No Longer Challenging the Fourth Amendment Arrest Claim, And Has No Fourth Amendment Substantive Due Process Right**

The Plaintiff, in his response to the Qualified Immunity Motion, appears to have abandoned the Fourth Amendment arrest claims as pled in the Second Amended Complaint, and is now arguing that Defendants have violated a 'Substantive Due Process' claim, derived from the Fourth Amendment. There is no such constitutional claim.

In his Second Amended Complaint [ECF #13], Thompson claimed his Fourth Amendment right to freedom from unlawful arrest, his Fourth Amendment right to freedom from unlawful search and seizure, and his right against retaliation under the First and Fourth Amendment were violated. *Id.* at 6-7. In his response to the Defendants' motions to dismiss, the Plaintiff asserts that it was not his traditional Fourth Amendment protections against unlawful

1

arrest and search, but his "Fourth Amendment Substantive Due Process Rights" which are at stake. However, the Due Process Clause is found in the Fourteenth Amendment, not the Fourth Amendment, and the Supreme Court has explicitly refused to analyze police misconduct under "substantive due process" where the Fourth Amendment provides an explicit protection against the type of governmental conduct alleged. *Albright v. Oliver,* 510 U.S. 266, 281 (1994) quoting *Graham v. Connor*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). The constitutional violations alleged in the Second Amended Complaint are alleged under the Fourth and First Amendment, not under the Fourteenth. At a minimum, the Plaintiff's pleadings demonstrate that the right which is sought to be protected in this instance is not clearly established.

The Plaintiff's response fails to address the unique nature of the qualified immunity held by these individual Defendants. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). A Court must consider whether the Defendant's actions were objectively unreasonable in light of *clearly established* law at the time of the conduct in question. To make this determination, the Court applies an objective standard based on the viewpoint of every reasonable official in light of the information then available to the Defendant and the law that was clearly established at the time of the Defendant's actions. *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted). The Plaintiff has failed to identify a Fourth or First Amendment right, which was clearly established. A Fourth Amendment 'Due Process" claim is novel. However, where Mr. Thompson's rights were not clearly established then Captain Jones and Sheriff Hamp could not have known at the time they were violating a clearly established right. They are, therefore, entitled to Qualified Immunity.

### b. The Behavior of the Officers does not "Shock the Conscience"

Although he has not alleged a Fourteenth Amendment Claim, for the sake of argument and in the event that the Court entertains as Shock's the Conscience analysis, it is useful to recognize that the facts in this case do not rise to such a level, typically reserved for truly horrible acts. Thompson now claims that there may be a substantive due process violation where the conduct of law enforcement agents is so outrageous that the due process principle would absolutely bar the government from invoking judicial processes to obtain a conviction.

Plaintiff's response [ECF # 21] attempts to illustrate, through dicta, that **Stokes v. Gann**, 498 F.3d 485 (5th Cir. 2007), forms the basis of his Substantive Due Process claims because in that case, the Supreme Court said "[d]eprivations of liberty caused by the most egregious official conduct may violate the Due Process Clause." Id., citing **County of Sacramento v. Lewis**, 523 U.S. 833, 846-48 (1998)(A Fourteenth Amendment claim brought after officers used patrol cars to stop pursuit suspect on a motorcycle, where the court found that this did not shock the conscience.). **Stokes** actually held that entrapment did not form the basis of a civil constitutional claim, and that the actions of the officer did not in fact "shock the conscience", under a separate Fourteenth Amendment analysis.

Citing **Rochin v. California** 342 U.S. 165 (1952), to illustrate a Fourteenth Amendment claim, the Plaintiff is mistaken in what amounts to truly egregious conduct. **Rochin**, was a case where police ordered a physically intrusive stomach pumping. This standard is reserved for the extreme.

The Plaintiff also suggests that the Defendant's conduct "shocks the conscience," using what he describes as a "similar pattern," in the cases of **Checki v. Webb**, 785 F2d 534, (5th Cir 1986), wherein a police officer struck a tourist for taking a photograph of him, and **Rogers v.**

3

*City of Little Rock , Ark.*,152 F3d 790, (8th Cir 1998), wherein a police officer raped a woman at her house after he stopped her for a traffic violation; and ***Hemphill v. Schott***, 141 F3d. 412 (2nd Cir 1998), wherein a police officer assisted a third party in shooting the plaintiff. Plaintiff's Response at 9-11, fn. 50. Nothing can be more dissimilar, than this "similar pattern", as this case involves officer arresting Thompson with probable cause for driving with a suspended license, then transporting him to the station for processing before bonding out, with no allegation of violence. This suggestion of a similar situation is an absurdity.

In the case at bar, Plaintiff is alleging that the Defendants learned he was driving without a license, set out to catch him driving without a license, provided him the opportunity to drive without a license (nowhere has Thompson alleged that he refused to drive because his license was suspended, or informed the officer of this), and then arrested him and processed him. There is an allegation that he was detained while an outstanding warrant from Montgomery County was investigated, but Thompson posted bond and was released within hours. Nothing about this shocks the conscience.

The Plaintiff cites *Lewis*, supra, claiming that this is an exercise of power without any reasonable justification in the service of a legitimate governmental objective, and that the arrest of the Plaintiff could not qualify as a legitimate governmental objective. (Response at 11.) The Plaintiff is incorrect. An arrest for probable cause is a legitimate governmental objective, and the Plaintiff, in Exhibit 2 to his response [#21], provides that reasonable objective. Sheriff Hamp, under oath at the Justice Court trial of Thompson and under examination by Thompson's attorney, stated that every six months, the department runs checks on everyone that operates a county vehicle in Tunica County per the county's fleet management policy. From that routine check, the department learned that Thompson's license was suspended. Hamp also stated that

4

this check had yielded an arrest of another county employee prior to Thompson. Exhibit 2 to Plaintiff's Combined Response [#21] at 51. Of note, for the purposes of the motion to dismiss, it is not necessary to determine how the Defendants came about the knowledge that Thompson's license was suspended, only that said knowledge formed the basis of probable cause to arrest him when he drove, and that there is a legitimate governmental objective in keeping unlicensed drivers off the road. Again, the existence of probable is not challenged by the Plaintiff.

### c. The Plaintiff Has Failed to Articulate a First Amendment Claim

In addition to the substantive due process claim under the Fourth Amendment (as pled) or otherwise as now asserted, the Plaintiff has alleged a First Amendment claim for retaliation. However the Plaintiff has failed to support this claim with a clearly established right. In challenging the Defendant's assertion that an otherwise legitimate arrest is not made illegal simply because an officer may have been motivated by disdain for the arrestees speech, the Plaintiff only argues that *Mesa v. Prejean*, 543 F. 3d 264, (5th Cir 2008), is not controlling. And, he argues that *Enlow v. Tishomingo County* 962 F2d 501 (5th Cir 1992), (*Enlow I*) illustrates that "the motivation for the arrest is relevant in determining whether it violated a person's First Amendment rights." (Response Page 14). However, the position of the Plaintiff is not supported.

The Northern District of Mississippi in the case of *Johnson v. Merchant* 2009 US Dist. LEXIS 111250, addressed the applicability of *Mesa v. Prejan*, to the lawfulness of arrest when First Amendment concerns are implicated. In *Johnson,* a white arrestee claims a black officer called him a "white boy", before using excessive force. The District Court stated:

> "However, the Fifth Circuit has clearly stated:
> 'when a person's conduct gives an officer probable cause to believe that she is guilty of a crime, that person does not taint a proper arrest by contemporaneously shouting 'police officers are corrupt.' Probable cause is

5

an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment. Of course, this is nothing more than a recognition that 'the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent' of the officer.' (Citing Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008) (quoting Whren v. United States, 517 U.S. 806, 814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)).

(*Johnson v. Merchant* supra.)

The District Court continued:

"The logic of Mesa and Whren is applicable in the instant case. Arresting an individual committing a crime is inherently reasonable. Because an officer's actions must be judged in an objective fashion, the court can not separate whatever subjective motivations may have been in play in deciding [6] to arrest Johnson from his objectively reasonable arrest. The state court deemed this arrest to be reasonable and convicted Merchant of the underlying charges. Allowing Merchant to question the validity of the arrest would allow him to question the validity of his conviction. Therefore his claim that he was arrested in retaliation for exercising his First Amendment rights is barred by Heck.

(*Johnson v. Merchant* supra.)

While Johnson had the added element of the conviction, and therefore a Heck v. Humphrey discussion, the application is not changed. Where the arrest is supported by probable cause, there is no First Amendment violation.

And *Enlow v. Tishimingo,* offered by the Plaintiff, involved an arrest prior to the raid of a gambling establishment. Supra. In *Enlow*, the plaintiff who was outside of the establishment before the raid was ever announced questioned officers about a warrant and was then arrested for allegedly 'interfering with a raid'. Supra at 509-510. Factually, there was a verbal challenge with police authority followed by an arrest which may not have been supported by probable cause. The *Enlow* court found that genuine issues of fact regarding probable cause made summary judgment inappropriate, thereby linking the Fourth and First Amendment claims. (*Id*

6

at 510). A jury later found in favor of the law enforcement officers on each claim, from which that plaintiff appealed and lost. ***Enlow v. Tishomingo County,*** 45 F.3d 885 (1995). (***Enlow II***). In the case at bar, there is no question but that probable cause existed at the time of the arrest.

Probable cause examines objectivity. Once the objective requirement of probable cause is established as a matter of law, the intent or purpose behind the arrest is immaterial. The Supreme Court has stated "this Court's cases foreclose the argument that ulterior motives can invalidate police conduct justified on the basis of probable cause. See, e.g., ***United States v. Robinson***, 414 U.S. 218, 221, n. 1, 236, 38 L. Ed. 2d 427, 94 S. Ct. 467. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." ***Whren v. United States***, 517 U.S. 806, 808 (1996). Subjective intent alone does not make otherwise lawful conduct illegal or unconstitutional. The fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. *Id.* at 813, citing ***Robinson*** at 138.

The Eastern District of Louisiana faced a similar set of allegations in ***Hahn v. City of Kenner,*** 984 F. Supp. 424 (E.D. La. 1997). In that case, the Plaintiff alleged he was stopped and arrested for political reasons, suffering false arrest and violation of his Fourteenth Amendment Due Process rights, and alleged the sheriff had received instructions to arrest him. However, the Court agreed that even with an alleged ulterior motive, police conduct is justifiable when there is probable cause to believe a violation of the law has occurred. The Court wrote "the existence or content of [Sheriff] Lombard's call is simply immaterial. Whether Lombard had an additional, improper motive to arrest Hahn is irrelevant to whether probable cause existed. And where, as here, probable cause is established, the Court has 'flatly dismissed the idea that an ulterior

7

motive might serve to strip the agents of their legal justification.'''" *Id.* at 429 citing ***Robinson*** at 218.

Taking the facts offered by the Plaintiff as true, there is no genuine issue of material fact as to whether or not Jones and Hamp knew that Thompson's license was suspended. The moment Thompson got behind the wheel of that car Jones either knew or had reason to believe that Thompson's license was suspended; there was probable cause for arrest. How Thompson and Hamp acquired this knowledge of suspicion is immaterial for determining the application of immunity. Where officers arrest a suspect with legal justification despite an allegation of improper motive, those officers are entitled to qualified immunity.

The Plaintiff's memorandum in opposition to the motions to dismiss seeks to convince this Court the motivation for the arrest, not the validity and probable cause for the arrest, disqualifies the use of immunity. The purpose of qualified immunity is to protect one who is performing his job duties as a governmental employee from personal liability ***Roderick v. City of Gulfport***, 144 F. Supp. 2d 622 (S.D. Miss. 200)*; **Conrod v. Holder**,* 825 So.2d 16 (Miss. 2002). Where, as here, the existence of probable cause is not disputed, the individuals are entitled to immunity.

### d. Defendants are entitled to Dismissal of the State Law Claims Regardless of Allegation of Malice.

Hamp and Jones are being sued individually, but at all relevant times, these Defendants were employees of Tunica County, acting in the course and scope of their employment. (Paragraphs 2, 3 and 14 of Seconded Amended Complaint.) .

The Mississippi Tort Claims Act (MTCA) provides the exclusive remedy for civil claims against governmental entities and employees. Mississippi Code Section 11-46-5(3) states: "For

the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Mississippi Code Section 11-46-7(2) provides "… no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. …". Quite simply, these Defendants cannot be held individually liable for acts presumptively occurring the course and scope of employment.

Although he never uses the term 'malice' in the Second Amended Compliant, in support of the denial of immunity, Plaintiff cites the Northern District's recent decision in *Papagolos v. Lafayette County Sch. Dist*., wherein the Court determined that a claim of malicious interference with contract fell outside of the purview of the Act. (Response at 16.) The significant distinction in *Papagotos* is this it involved a claim for malicious interference with contract, a tort which contained **malice as an essential element**. 972 F. Supp .2d 912, 835 (N.D. Miss 2013). The Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA under § 11-46-5(2). See *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688-89 (Miss. 2009). It follows that those torts without malice, and otherwise not listed, are necessarily included under the MTCA. There is no recognized tort that is simply called "malice", and the state law claims levied by Thompson for abuse of process and intentional infliction of emotional distress, do not include malice as an essential element. Both of these claims fall within the protection of the Mississippi Tort Claims Act.

### *Abuse of Process*

The Plaintiff does not plead within the Second Amended Complaint that the cause of action for Abuse of Process was committed with malice, it is therefore within the MTCA grant of immunity to the individuals. (11-46-5 and 11-46-7).

Further, abuse of process occurs when (1) a party makes an illegal use of a legal process, (2) the party has an ulterior motive, and (3) damage results from the perverted use of process. ***Ayles ex rel. Allen v. Allen***, 907 So.2d 300, 303 (Miss. 2005). Regardless of the existence or non-existence of malice, as described above the undisputed existence of probable cause necessarily implies that the there was a legal use of a legal process. The absence of a necessary element prohibits the Plaintiff from asserting this state law claim.

### *Intentional Infliction of Emotional Distress*

The Plaintiff has not pled that the intentional infliction of emotional distress is predicated on malice, and in the absence of proof of malice on this claim, the Mississippi Tort Claims Act prohibits a claim directly against the individual Defendant. (11-46-5 and 11-46-7).

Further, in order to prevail on a claim for intentional infliction of emotional distress, the severity of the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ***Speed v. Scott***, 787 So. 2d 626, 630 (¶18) (Miss. 2001) (quoting ***Pegues v. Emerson Elec. Co***., 913 F. Supp. 976, 982 (N.D. Miss. 1996)). In cases involving intentional infliction of emotional distress, the plaintiff must prove the defendant's conduct "was wanton and willful and evoked outrage or revulsion." ***Riley v. F.A. Richard & Assocs., Inc.***, 16 So. 3d 708, 719 (P33) (Miss. Ct. App. 2009). Generally, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." Id. at 630 (¶19) (quoting ***Jenkins v. City of Grenada***, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). It is not extreme, nor outrageous, nor beyond all possible bounds of decency to arrest a driver with a suspended license. This claim must fail.

*<u>False Arrest and False Imprisonment</u>*

The Plaintiff has also alleged False Arrest and False Imprisonment, as state law claims which may fall outside of the MTCA, because this tort does include an element of malice.

To establish a claim of false arrest or false imprisonment, a plaintiff must prove that the Defendant caused him "to be arrested falsely, unlawfully, maliciously, and without probable cause." *Croft v. Grand Casino Tunica, Inc*., 910 So. 2d 66, 75 (Miss. Ct. App. 2005)(citing *City of Mound Bayou v. Johnson*, 562 So. 2d 1212 (Miss. 1990)). See also *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 728-29 (Miss. 1989). Where probable cause exists for an arrest, there can be no false arrest claim. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Plaintiff has failed to prove (or even allege) that the Jones lacked probable cause. Further, the arrest in and of itself was lawful.

The state law claims must be dismissed.

## Conclusion

For the aforementioned reasons, Defendant Hamp and Defendant Jones' motion for dismissal asserting Qualified Immunity should be accepted.

RESPECTFULLY SUBMITTED, this the 21st day of April, 2015.

                                                CALVIN HAMP AND
                                                JAMES JONES, DEFENDANTS

                                                By: /s/ Michael J. Wolf
                                                      Michael J. Wolf

OF COUNSEL:

MICHAEL J. WOLF – MSB # 99406
PAGE, KRUGER & HOLLAND, P.A.
P.O. Box 1163
Jackson, Mississippi 39215-1163
T: 601-420-0333
Email: mwolf@pagekruger.com

## **CERTIFICATE OF SERVICE**

    I, the undersigned attorney for Defendant, do hereby certify that I have this day filed and caused to be sent to all counsel of record, a true and correct copy of the foregoing document via the ECF system.

    This the 21st day of April, 2015.

                                              /s/ Michael J. Wolf
                                                  Michael J. Wolf