Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MICHAEL THOMPSON                                    PLAINTIFF

vs.                    CIVIL ACTION NO. 3:14cv274-NBB-SAA

CALVIN HAMP, IN HIS INDIVIDUAL CAPACITY AND
IN HIS OFFICIAL CAPACITY AS SHERIFF OF
TUNICA COUNTY, MS, JAMES JONES, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL CAPACITY AS A CAPTAIN
IN TUNICA COUNTY'S SHERIFF'S OFFICE, AND UNKNOWN
DEFENDANTS "A," "B" AND "C"                        DEFENDANTS

*****************************************************
          DEPOSITION OF MICHAEL THOMPSON
*****************************************************


          APPEARANCES NOTED HEREIN


          DATE:  FRIDAY, AUGUST 12, 2016
          PLACE:  PAGE, KRUGER & HOLLAND ORIGINAL
               JACKSON, MISSISSIPPI
               TIME:  9:00 A.M.


REPORTED BY:  KELLYE S. SHOWS, BCR, CSR
          CSR #1290

          DAVIS COURT REPORTING
          Post Office Box 44
     Madison, Mississippi  39130
          (601) 856-8889
     www.daviscourtreporting.com
     marytodd@daviscourtreporting.com



Michael Thompson
August 12, 2016

Page 2

1  APPEARANCES:
2
3         MS. EUGENE CARLOS TANNER, III
       TANNER & ASSOCIATES, LLC
       263 EAST PEARL STREET
4      JACKSON, MISSISSIPPI  39201
       Telephone:  601.460.1745
5      carlos.tanner@thetannerlawfirm.com
6
       MR. MICHAEL J. WOLF
7      PAGE, KRUGER & HOLLAND
       10 CANEBRAKE BOULEVARD
8      SUITE 200
       FLOWOOD, MISSISSIPPI  39232
9      Telephone:  601.420.0333
       mwolf@pagekruger.com
10              COUNSEL FOR DEFENDANTS
11
12
13
14
15
16
17
18
19              KELLYE S. SHOWS
            DAVIS COURT REPORTING
20            Post Office Box 44
          Madison, Mississippi  39130
21              (601) 856-8889
22
23
24
25

Michael Thompson
August 12, 2016

Page 4

1      MR. WOLF:  We're taking this pursuant to

2  Notice.  All the substantive objections can be

3  reserved.  All procedural objections should be stated

4  on the record.  Is that agreeable, the standard

5  stipulation?

6      MR. TANNER:  Yes.

7          MICHAEL THOMPSON,

8      having been first duly sworn, was

9      examined and testified as follows:

10              EXAMINATION

11  BY MR. WOLF:

12      Q.    Mr. Thompson, my name is Michael Wolf.

13  I'm the attorney for Calvin Hamp and James Jones in

14  a lawsuit you filed against them.  I'm here today to

15  take your deposition.  I expect you've spoken to your

16  attorney about depositions a little bit.  I'm going

17  to go over them, but first let me get your full name

18  spelled, if you would.

19      A.    Michael Thompson, M-I-C-H-A-E-L

20  T-H-O-M-P-S-O-N.

21      Q.    And your current address?

22      A.    227 Turtle Lane, Brandon, Mississippi 39047.

23      Q.    If I can have the last four digits of your

24  Social Security number.

25      A.    6113.

Michael Thompson
August 12, 2016

Page 36

1      Q.      Thompson & Wiley, you said they existed

2    only in 2003.  Is that correct?

3      A.      (Nodded head affirmatively.)

4      Q.      Is that a yes?

5      A.      Yes.

6      Q.      And they never did any business, did they?

7      A.      No, no.

8      Q.      Did you have a partner in that business?

9      A.      Yes.

10     Q.      Who was your partner?

11     A.      Alex Wiley.

12     Q.      Is this the same Alex Wiley that was with

13   you on the date of your arrest in Tunica?

14     A.      Yes.

15     Q.      Do you know where Alex Wiley lives now?

16     A.      Memphis, Tennessee.

17     Q.      Prior to your being employed for the

18   County of Tunica, do you know if Alex Wiley was

19   employed in that county?

20     A.      Could you repeat that question.

21     Q.      I understand at some point in time Alex

22   Wiley was the comptroller for Tunica County.  Is that

23   correct?

24     A.      Yes.

25     Q.      When did he become comptroller, to your

Michael Thompson
August 12, 2016

Page 37

1  knowledge?  Was it before you were hired as county

2  administrator or after?

3       A.    After.

4       Q.    Do you know if he ever held a position

5  with Tunica County before that?

6       A.    No, I don't know.

7       Q.    Just generally speaking, what does a

8  comptroller do?  I've heard that title but I've never

9  taken the time to figure out what a comptroller

10  actually is.  Help me out there.

11       A.    Bookkeeping.

12       Q.    Okay.  Do you know if Alex has any

13  particular specialized licenses in accounting or

14  bookkeeping?

15       A.    Certified public accountant.

16       Q.    Were you the one that hired him to work

17  at Tunica?

18       A.    The board voted to employ him.

19       Q.    You recommended his hiring?

20       A.    Yes, yes.

21       Q.    And you solicited him to take on this job.

22  Is that correct?

23             MR. TANNER:  Object to the form of the

24  question.

25  BY MR. WOLF:

Michael Thompson
August 12, 2016

Page 57

1      A.     Yes.

2      Q.     All right.  In February of 2014, was your

3  license either revoked or suspended?

4             MR. TANNER:  Object to the form of the

5  question.

6      A.     At that time, to my knowledge, they were

7  valid.

8  BY MR. WOLF:

9      Q.     And have you since discovered that at

10 some point in February of 2014 your license was, in

11 fact, suspended?

12     A.     I later learned that my license were

13 suspended.

14     Q.     And the suspension was a result of an

15 unpaid ticket out of Montgomery County.  Is that your

16 understanding?

17     A.     An unpaid ticket out of Montgomery County,

18 yes.

19             MR. WOLF:  Let's take five minutes.

20             (OFF RECORD 10:51 A.M. TO 10:54 A.M.)

21 BY MR. WOLF:

22     Q.     Can you tell me the reason you left Tunica

23 County as the county administrator.

24     A.     The board voted to appoint a new county

25 administrator.

Michael Thompson
August 12, 2016

1   legal conclusion.

2        A.    I'm not sure I understand the question.

3   BY MR. WOLF:

4        Q.    Do you contend that Sheriff Hamp and

5   Deputy Jones had some conversations in which they

6   hatched a plan to arrest you?

7        A.    I don't know.

8        Q.    Do you have some information about any

9   conversations that took place between Deputy Jones and

10  Sheriff Hamp in which your arrest was contemplated?

11       A.    What's the question again?

12       Q.    Do you have any information regarding any

13  conversations between Sheriff Hamp and Deputy Jones

14  where they contemplated arresting you before the event?

15       A.    The trial transcript.

16       Q.    So apart from the trial transcript you don't

17  have any independent knowledge, then, of any conversations

18  between Hamp and Jones regarding a conspiracy before

19  the event, do you?

20       A.    I want to make sure I -- I don't understand

21  the question.

22       Q.    Twice you've referred to the transcript as

23  the source of your information regarding conspiracy.

24  Do you have any information outside of that trial

25  transcript regarding your allegations of conspiracy?

Michael Thompson
August 12, 2016

1      A.    I don't know.

2      Q.    All right.  When we're done with this,

3   will you go look through your papers and if you find

4   any transcripts give them to your counsel?

5           MR. TANNER:  Object to the form of the

6   question.

7   BY MR. WOLF:

8      Q.    Would you be willing to do that?

9           MR. TANNER:  Object to the form of the

10  question.

11  BY MR. WOLF:

12     Q.    Now, do you have any information outside

13  of what you recall reading in a transcript regarding

14  what you understood to be the conspiracy that you

15  allege between Jones and Hamp?

16     A.    No.

17     Q.    Okay.  Factually, what is it you're

18  claiming that Calvin Hamp or Sheriff Hamp did to you?

19  Why are you suing him?

20     A.    What's the question again?

21     Q.    Why are you suing Sheriff Hamp?

22          MR. TANNER:  Object to the form of the

23  question.

24     A.    Sheriff Hamp is the elected official for

25  Tunica County sheriff.

Michael Thompson
August 12, 2016

Page 109

1   get at is do you have any personal knowledge --

2   let's start with that, what you know personally about

3   what Sheriff Hamp did or didn't do on the day you

4   were arrested.

5        A.    I don't recall.

6        Q.    Is there a reason you don't recall what

7   Sheriff Hamp did or didn't do on the day you were

8   arrested?

9        A.    Is there a reason?

10       Q.    Yes.  Is there a reason you don't recall

11  his conduct or lack of conduct on the day?

12       A.    I don't recall.

13       Q.    All right.  So as you sit here today you

14  don't have any recollection of the conduct of

15  Sheriff Hamp on the date you were arrested.  Is that

16  a correct statement?

17       A.    I can't recall.  What's the question again?

18       Q.    I was asking you if you can think of any

19  reason why you don't recall his conduct on the date

20  in question?

21            MR. TANNER:  Object to the form of the

22  question.

23  BY MR. WOLF:

24       Q.    There's a question out there.

25       A.    Which is?

Michael Thompson
August 12, 2016

Page 110

1  Q.  Let me ask you a better way.  What
2  happened to your memory or has something happened to
3  your memory that doesn't allow you to recall?
4  A.  No.
5  Q.  Okay.  So as you sit here today you have
6  a good recollection of the events of that day that
7  you were arrested?
8  A.  Good?
9  Q.  Yes.  You do recall the events of that day
10  that you were arrested.  Correct?
11  A.  I'm not sure which events you're talking
12  about.
13  Q.  The date you were arrested.
14  A.  Okay.
15  Q.  Do you recall that day?
16  A.  Yes.
17  Q.  Okay.
18  A.  Yes, yes.
19  Q.  Do you recall having seen Sheriff Hamp at
20  any point that day?
21  A.  I can't recall.
22  Q.  All right.  Did you see him during your
23  arrest that day?
24  A.  No.
25  Q.  Did you see him after your arrest that day?

Michael Thompson
August 12, 2016

Page 111

1      A.     No.

2      Q.     Okay.  Have you spoken to anybody or has

3   anybody told you that Sheriff Hamp did something to

4   conspire to violate your constitutional rights?

5      A.     I can't recall.

6      Q.     Have you spoken to anybody or been told

7   by anybody, other than your lawyer, about conduct of

8   Sheriff Hamp that you believe relates to this event

9   in which you were arrested?

10     A.     I can't recall.

11     Q.     How about Deputy Jones?  Do you recall

12  seeing him on the date of the arrest?

13     A.     Yes.

14     Q.     All right.  And, in fact, he arrested you.

15  Correct?

16     A.     Yes.

17     Q.     All right.  And other deputies were there

18  and present that day as well.  Correct?

19     A.     Yes.

20     Q.     And, in fact, another deputy -- did another

21  deputy transport you to the jail?

22     A.     Yes.

23     Q.     Do you recall who that deputy was?

24     A.     I can't recall.  I can't recall.

25     Q.     Do you believe that Sheriff Hamp and

Michael Thompson
August 12, 2016

1   Q.   What happened next that you recall?

2   A.   I recall Mr. Wiley saying no.

3   Q.   Do you recall what happened next?

4   A.   I recall the officer requesting Mr. Wiley's

5   license.

6   Q.   At this point did you recognize the officer?

7   A.   No.

8   Q.   After the officer requested the license,

9   what do you recall happening next?

10   A.   At some point thereafter I recall the

11   officer stating that there was a problem with

12   Mr. Wiley's license.

13   Q.   Then what happened next?

14   A.   I recall the officer asking Mr. Wiley

15   what that problem was.

16   Q.   And do you recall what happened or was

17   said next?

18   A.   I recall Mr. Wiley trying to explain

19   something but I can't recall specifically what.

20   Q.   All right.  After that what happened?

21   A.   I recall at some point thereafter -- at

22   some point I recall the officer requesting that I

23   operate the vehicle.

24   Q.   Do you recall exactly what was said?

25   A.   I recall the officer saying because

Michael Thompson
August 12, 2016

1  something is wrong with Mr. Wiley's license that you

2  need to let your passenger drive.

3       Q.    All right.  What happened next?

4       A.    At some point I entered the driver seat.

5       Q.    And at any point prior to you entering

6  the driver seat did you inform the officer that your

7  license was suspended?

8       A.    No.

9       Q.    Okay.  After entering the driver seat,

10  what happened next?

11       A.    Thereafter I pulled off to continue to

12  head to Memphis.

13       Q.    During that initial stop did you or

14  Mr. Wiley attempt to inform the officers -- the

15  stopping officer that you were county employees?

16       A.    I recall Mr. Wiley stating that he was

17  the comptroller.

18       Q.    Did you ever indicate who you were?

19       A.    I don't recall.

20       Q.    Did you ever hear Mr. Wiley say this is

21  the county administrator here or indicate your name

22  to the officer?

23       A.    I don't recall.

24       Q.    Did you ever have any contact with Deputy

25  Jones prior to the date of the arrest?

Michael Thompson
August 12, 2016

Page 144

1    A.    I can't recall.

2    Q.    Are you an economist, sir?

3    A.    No.

4    Q.    Have you ever had any background or

5    experience or training in future income accounting?

6    A.    No.

7    Q.    You mentioned earlier that when you --

8    during some year that you were with KPMG -- I think

9    it may be 2011, but if not forgive me, but at some

10   year you made $119,000 per year.  Do you recall that?

11   A.    Yes.

12   Q.    Is that plus benefits?  Were you also given

13   benefits or compensation benefits for your work at KPMG?

14   A.    Yes, yes.

15   Q.    You told Mr. Wolf that you were hired by

16   Tunica board of supervisors to be the county

17   administrator in January of 2014.  Are you sure of

18   that date?  Could it have been December instead of

19   January?

20   A.    The board took the vote in December and

21   made the start date effective January.

22   Q.    Okay.  So it could be said that you were

23   hired in December even though the start date was in

24   January?

25   A.    Yes.

1               CERTIFICATION OF REPORTER

2

3         I, Kellye S. Shows, Court Reporter and

4  Notary Public for the state of Mississippi, do

5  hereby certify that the above and foregoing pages

6  contain a full, true and correct transcript of the

7  proceedings had in the aforenamed case at the time

8  and place indicated, which proceedings were recorded

9  by me to the best of my skill and ability.

10       I also certify that I placed the witness

11  under oath to tell the truth and that all answers

12  were given under that oath.

13       I certify that I have no interest,

14  monetary or otherwise, in the outcome of this case.

15

16

17    This the 20th. day of August , 2016.

18

19

20             KELLYE S. SHOWS
               MS CSR #1290

21

22

23  My Commission Expires:
    January 17, 2020

24

25

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 13202
KELLYE S. SHOWS
Commission Expires
Jan. 17, 2020
MADISON COUNTY