IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MICHAEL THOMPSON                                                        PLAINTIFF

V.                                                     CIVIL ACTION NO.  3:14cv274-NBB-SAA

CALVIN HAMP, in his individual capacity;
JAMES JONES, in his individual capacity;
and UNKNOWN DEFENDANTS
"A", "B" AND "C"                                                        DEFENDANTS

## MEMORANDUM IN SUPPORT OF DEFENDANT JAMES JONES' and DEFENDANT CALVIN HAMP'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendants, and each of them, in the above referenced cause and file this Memorandum in Support of the Summary Judgment, to wit;

The Defendant, Calvin Hamp, is named in the Second Amended Complaint in his individual capacity only.  At the time of the allegations of the Second Amended Complaint, Hamp was, and still is, the Sheriff of Tunica County. (Docket Number 13).

The Defendant, James Jones, is named in the Second Amended Complaint in his individual capacity only.  At the time of the allegations of the Second Amended Complaint, Jones was a Captain in the Tunica County Sheriff's Department.  (Docket Number 13).

Tunica County is not a party to this suit. (See Agreed Order of Dismissal, Docket Number12 and Second Amended Complaint Number 13)

The Second Amended Complaint, filed March 20th, 2015, alleges causes of action against the defendant for constitutional violations under the Fourth and Fifth Amendments of the United States Constitution, as well as supplemental state law claims.  The plaintiff also asserts a First Amendment and a conspiracy claim.  (Docket Number 13).  However, in response to a prior motion to dismiss, the Plaintiff abandoned his search and seizure claims, in favor of a substantive due process claims.

1

(Docket Number 21).

The Defendants are each entitled to complete dismissal of the alleged constitutional claims against them. The Defendants are also is entitled to immunity from state law claims, under the Mississippi Tort Claims Act (MTCA), 11-46-1 et seq.

## PROCEDURAL POSTURE OF THE CASE

The Defendants each brought a prior motion to dismiss asserting, inter alia, the defense of qualified immunity. This motion was brought at the initial stages proceedings, and before any discovery was conducted.

In response to the motion to dismiss the Plaintiff asserted that his theory of liability was a "shocks the conscious" theory violating the substantive due process clause. The Plaintiff did not oppose the arguments to dismiss the claims based on search, seizure and arrest.

The Court in its March 30, 2016 order denying the early motion stated: "The court finds that the constitutional violations alleged in this case are sufficiently credible to allow further development through discovery." (Docket Number 26). The Order did not express which theory was sufficiently credible to allow further development, however the only theories argued by the Plaintiff were "Substantive Due Process" under the Fourth Amendment, First Amendment Retaliation and Conspiracy under 42 USC 1985.

Discovery has now ended pursuant to the Court's Scheduling Order. Depositions have been taken and written discovery propounded. The Defendants now assert this motion for summary judgment. Each individually named Defendant is asserting the right to have the claims against him considered on an individual basis, and as such dismissed.

2

## STANDARD OF REVIEW

In filing this motion for summary judgment, the Court must look beyond the four corners of the pleadings, and consider evidence under Miss. R. Civ. P, Rule 56. A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. Celotex Corp., 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## STATEMENT OF UNDISPUTED FACTS

Michael Thompson was hired as the County Administrator of Tunica County, with an effective start date of January 2014. (Exhibit "A", Deposition of Michael Thompson, Page 144).

After he was hired, Michael Thompson recommended that Alex Wiley be hired as the Comptroller for Tunica County. (Exhibit "A" pages 36 and 37).

Shortly after Wiley was hired, citizens reported to Sheriff Hamp that Michael Thompson "gave a contract to his brother", and following up on these allegations the Sheriff discovered on the internet that Thompson and Wiley did in fact have a business together. (Exhibit "B" Deposition of Sheriff Hamp, page 13). The Sheriff brought no charges as a result the allegations or investigation, but referred the matter to the Mississippi Ethics Commission and the Attorney

3

General. (Exhibit "B" page 13-14).

Additionally, the County has a fleet management safety policy, which requires that all employees who drive public vehicles must have driver's licenses checked at on a regular basis. (Exhibit "B" page 10-11). After Mr. Thompson's license was run, the Sheriff was informed that Michael Thompson had a suspended license, and personally called another county where the license had been suspended to confirm that a warrant may have been issued. (Exhibit "B" pages 16-17.) It is also undisputed that Michael Thompson's license was suspended on the date of his arrest, which is the subject of this lawsuit. (Exhibit "A", page 57).

Captain Jones, now retired, was in charge of special investigations, and was made aware of Thompson's suspended license, along with the existence of a warrant on another employee, Alvin Harris, who was wanted in Desoto County. (Exhibit "B" page 16). (Harris was arrested in Tunica and transported to Desoto).

James Jones, had extensive experience in law enforcement with over 23 years in the profession. (Exhibit "C", Deposition of James Jones page 6-7).

There is no evidence of any meeting in which Hamp and Jones conspired to arrest the plaintiff. In fact, when the plaintiff was asked if he contends that Sheriff Hamp and Deputy Jones had some conversations in which they hatched a plan to arrest him, his response was "I don't know" (Exhibit "A" page 100).

On February 12, 2014, James Jones was traveling north on Highway 61 when saw a vehicle going in and out of lanes of traffic, stating "I didn't know what was going on, if he was drunk or what was going on with it. So I pulled the vehicle over to see, make sure it was okay. And that's the nature of me pulling the vehicle over." (Exhibit "C" page 8)

The vehicle was driven by County Comptroller Alex Wiley, while Thompson was a

4

passenger. Captain Jones, ran Mr. Wiley's license and discovered that his license status was "Eligible for Reinstate", suggesting that it might be suspended. (Exhibit "C" page 32). Captain Jones had never heard of this status, so he was uncomfortable arresting the driver, Alex Wiley. (Exhibit "C" page 34). Further, Jones had already determined that the driver was not intoxicated, based on his interaction. (Exhibit "C" page 34). It was determined, after the fact, that the status of Wiley was in fact a suspension, but eligible for reinstatement.

Concerned that Wiley should not drive with what may be a suspended license, Jones, asked the passenger Michael Thompson, "Are your license valid, sir?". (Exhibit "C" page 38 line 10). Thompson was heard by Jones to respond "Yes". (Exhibit "C" page 38 line 10). Jones believed that this response was a lie. (Ex C page 38.).

Similarly the plaintiff states in his deposition, at pages 114-115:

```
8     Q. After the officer requested the license,
9        what do you recall happening next?
10    A. At some point thereafter I recall the
11    officer stating that there was a problem with
12    Mr. Wiley's license.
13    Q. Then what happened next?
14    A. I recall the officer asking Mr. Wiley
15    what that problem was.
16    Q. And do you recall what happened or was
17    said next?
18     A. I recall Mr. Wiley trying to explain
19    something but I can't recall specifically what.
20    Q. All right. After that what happened?
21    A. I recall at some point thereafter -- at
22    some point I recall the officer requesting that I
23    operate the vehicle.
24     Q. Do you recall exactly what was said?
25    A. I recall the officer saying because

1     something is wrong with Mr. Wiley's license that you
2     need to let your passenger drive.
3     Q. All right. What happened next?
4     A. At some point I entered the driver seat.
```

5

```
5    Q. And at any point prior to you entering
6    the driver seat did you inform the officer that your
7    license was suspended?
8    A. No.
9    Q. Okay. After entering the driver seat,
10   what happened next?
11   A. Thereafter I pulled off to continue to
12   head to Memphis.
```

(Exhibit "A" pages 114-115)

Jones allowed Thompson to take control of Wiley's vehicle. (Exhibit " C" page 38). After he left from this initial scene, Jones reasonably describes his suspicion for the subsequent arrest. "Mr. Thompson was being deceitful. He was lying to me about his particular license." (Exhibit "C" page 44) "If I see an individual with suspended license and me knowing that that license is suspended, the probable cause is their suspended license." (Exhibit "C" page 44). Jones stopped the vehicle a second time.

Mr. Thompson's suspension was confirmed. According to standing policy, all drivers found to be driving on a suspended license were arrested, Mr. Thompson was no exception. (Exhibit "D", Policy of Tunica County).

The arrest, including both stops were captured, in part, on video tape. (A copy of which is attached hereto as Exhibit "E"). The conduct of all involved was professional.

There is absolutely no evidence that Sheriff Hamp was made aware of the arrest until after it occurred. Nor is there any evidence that Sheriff Hamp participated in any prior decision to make the arrest of Thompson on the night of February 12, 2016.

Though the Sheriff was not sued in his official capacity, when asked why he was suing the Sheriff, the Plaintiff responded that "Sheriff Hamp is the elected official for Tunica County" (Exhibit "A" page, 106.) No individual acts were identified. When asked what the Sheriff did on the day of

6

his arrest, the Plaintiff has no recollection. (Exhibit "A". Page 109-111).

Thompson was first convicted at the Justice Court, and then on trial de novo at the Circuit Court he was found not guilty.

There is no evidence that Thompson was engaged in any protected free speech.

## THERE IS NO EVIDENCE OF A CONSITUTIONAL VIOLATION WHICH WAS CLEARLY ESTABLISHED SUCH THAT THE PARAMETERS WOULD BE KNOWN BY ALL OFFICERS UNDER SIMILAR CIRCUMSTANCES.

Once again, as these are individually named defendants, the question of qualified immunity must be considered. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

Because Qualified Immunity constitutes an immunity from suit rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . as [i]nquiries of this kind can be peculiarly disruptive of effective government. Thus, adjudication of Qualified Immunity claims should occur at the earliest possible stage in litigation. Id. In this instance, the Court has given opportunity for the Plaintiff to prove up his case though discovery, yet still significantly absent is the proof of any clearly established constitutional violation.

To determine if an individual is entitled to Qualified Immunity, the Court applies a two-step analysis. "First, [the court] ask[s] whether, considered in the light most favorable to the plaintiff, the

plaintiff has alleged facts that, if proven, would establish that the official violated the plaintiff's constitutional rights." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238 (5th Cir. 2008) (per curiam) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008) (per curiam). The second prong requires the Court to consider whether the Defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the Court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the Defendant and the law that was clearly established at the time of the Defendant's actions. *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted).

## THE PLAINTIFF'S ABANDONED THE SEARCH AND SEIZURE CLAIMS FOR A DUE PROCESS ARGUMENT IN PRIOR PLEADINGS

The Plaintiff, in his response to the previously filed Qualified Immunity Motion, abandoned his Fourth Amendment seizure and arrest claims as pled in the Second Amended Complaint, and argued only that Defendants have violated a 'Substantive Due Process' claim, derived from the Fourth Amendment, that a first amendment claim existed, and that a conspiracy existed. (Docket Number 21). After the Plaintiff had abandoned his search and seizure claims, in favor of a due process claim, this the Court denied the motion to dismiss and permitted discovery.

## THERE IS NO DUE PROCESS VIOLATION FROM THE FACTS IN THIS CASE

The Due Process Clause is found in the Fourteenth Amendment, not the Fourth Amendment as previously argued by Plaintiff. Further, the Supreme Court has explicitly refused

to analyze police misconduct under "substantive due process" where the Fourth Amendment provides an explicit protection against the type of governmental conduct alleged. *Albright v. Oliver,* 510 U.S. 266, 281 (1994) quoting *Graham v. Connor,* 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). At a minimum, the Plaintiff's pleadings demonstrate that the right which he seeks to be protected is not so clear as to provide even experienced attorneys with its parameters. A good indication that qualified immunity is appropriate, is the absence of clear law showing such a constitutional right in a non-physical arrest

### The Behavior of does not "Shock the Conscience"

Although he has not alleged a Fourteenth Amendment Claim, for the sake of argument and in the event that the Court uses a "Shock's the Conscience" analysis, it is useful to recognize that the facts in this case do not rise to such a level, typically reserved for truly horrible physical acts. Thompson has claimed in the past that there may be a substantive due process violation where the conduct of law enforcement is so outrageous that the due process principle would absolutely bar the government from invoking judicial processes to obtain a conviction. This is not such a case.

Plaintiff's response to the previous Motion to Dismiss, (Docket number 21) attempted to illustrate, through dicta, that *Stokes v. Gann,* 498 F.3d 485 (5th Cir. 2007), forms the basis of his Substantive Due Process claims because in that case, the Supreme Court said "[d]eprivations of liberty caused by the most egregious official conduct may violate the Due Process Clause." Id., citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846-48 (1998)(A Fourteenth Amendment claim brought after officers used patrol cars to forcefully stop pursuit suspect on a motorcycle, where the court found that this did not shock the conscience.). *Stokes* holds that entrapment did not form the basis of a civil constitutional claim, and that the actions of the officer did not in fact "shock the conscience", under a separate Fourteenth Amendment analysis.

9

The question then turns to understanding what this idea of "shocks the conscience means" . In *Rochin v. California* 342 U.S. 165 (1952), involving Fourteenth Amendment claim, the police ordered a physically intrusive stomach pumping. Conduct "shocked the conscience," in the cases of *Checki v. Webb*, 785 F2d 534, (5th Cir 1986), wherein a police officer struck a tourist for taking a photograph of him, and *Rogers v. City of Little Rock , Ark.*,152 F3d 790, (8th Cir 1998), wherein a police officer raped a woman at her house after he stopped her for a traffic violation; and *Hemphill v. Schott*, 141 F3d. 412 (2nd Cir 1998), wherein a police officer assisted a third party in shooting the plaintiff.   Physical violence is consistent in each of these cases, but as importantly the parameters of that type of case have never been examined in a simple driving on a suspended license case, even when the plaintiff is a known and disliked suspect.

In the case at bar, Plaintiff is alleging that the Defendants learned he was driving without a license, set out to catch him driving without a license, provided him the opportunity to drive without a license and then arrested him.   But the proof falls short of a "shock the conscience" event. Nothing about this shocks the conscience.

### The Plaintiff Has Failed to Articulate a First Amendment Claim

The Plaintiff has alleged a First Amendment claim for retaliation.  However the Plaintiff has failed to support this claim with a clearly established right.

The Northern District of Mississippi in the case of *Johnson v. Merchant* 2009 US Dist. LEXIS 111250, examined the lawfulness of arrest when First Amendment concerns are implicated. In *Johnson,* a white arrestee claims a black officer called him a "white boy", before using excessive force.   The District Court stated:

> "However, the Fifth Circuit has clearly stated:
> 'when a person's conduct gives an officer probable cause to believe
> that she is guilty of a crime, that person does not taint a proper arrest by

10

contemporaneously shouting 'police officers are corrupt.' Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment. Of course, this is nothing more than a recognition that 'the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent' of the officer.' (Citing Mesa v. Prejean, 543 F.3d 264, 273 (5th Cir. 2008) (quoting Whren v. United States, 517 U.S. 806, 814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)).

(*Johnson v. Merchant* supra.)

The District Court continued:

"The logic of Mesa and Whren is applicable in the instant case. Arresting an individual committing a crime is inherently reasonable. Because an officer's actions must be judged in an objective fashion, the court can not separate whatever subjective motivations may have been in play in deciding [6] to arrest Johnson from his objectively reasonable arrest. The state court deemed this arrest to be reasonable and convicted Merchant of the underlying charges. Allowing Merchant to question the validity of the arrest would allow him to question the validity of his conviction. Therefore his claim that he was arrested in retaliation for exercising his First Amendment rights is barred by Heck.

(*Johnson v. Merchant* supra.)

While *Johnson* had the added element of the conviction, and therefore a *Heck v. Humphrey* discussion, the application is not changed. Where the arrest is supported by probable cause, there is no First Amendment violation.

Probable cause examines objectivity. Once the objective requirement of probable cause is established as a matter of law, the intent or purpose behind the arrest is immaterial. The Supreme Court has stated "this Court's cases foreclose the argument that ulterior motives can invalidate police conduct justified on the basis of probable cause. See, e.g., *United States v. Robinson*, 414 U.S. 218, 221, n. 1, 236, 38 L. Ed. 2d 427, 94 S. Ct. 467. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 808 (1996).

11

Subjective intent alone does not make otherwise lawful conduct illegal or unconstitutional. The fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. *Id.* at 813, citing ***Robinson*** at 138.

The Eastern District of Louisiana faced a similar set of allegations in ***Hahn v. City of Kenner,*** 984 F. Supp. 424 (E.D. La. 1997). In that case, the Plaintiff alleged he was stopped and arrested for political reasons, suffering false arrest and violation of his Fourteenth Amendment Due Process rights, and alleged the sheriff had received instructions to arrest him. However, the Court agreed that even with an alleged ulterior motive, police conduct is justifiable when there is probable cause to believe a violation of the law has occurred. The Court wrote "the existence or content of [Sheriff] Lombard's call is simply immaterial. Whether Lombard had an additional, improper motive to arrest Hahn is irrelevant to whether probable cause existed. And where, as here, probable cause is established, the Court has 'flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification.'" *Id.* at 429 citing ***Robinson*** at 218.

There is no genuine issue of material fact as to whether or not Jones and Hamp knew that Thompson's license was suspended. They did. Therefore the moment Thompson lied about the status of his license and got behind the wheel of that car, Jones either knew or had reason to believe that Thompson's license was suspended and probable cause existed. Where officers arrest a suspect with legal justification despite an allegation of improper motive, those officers are still entitled to qualified immunity.

The right of public employees to be free from retaliation when exercising First Amendment speech rights is well established. See ***Pickering v. Bd. of Educ. of Twp. High School. Dist.*** 205, ***Will Cnty., Ill.***, 391 U.S. 563, 574 (1968). The First Amendment protects a significant amount of

12

verbal criticism and challenge directed at police officers and departments. *Mesa v. Prejean* 543 F.3d 264 (5th Cir. 1992), quoting *Enlow v. Tishonmingo County*, 962 F. 2d 501 (5th Cir. 1992). However, speech opposing or challenging the police does not create a protective shield against arrest. Probable cause is an objective standard, and if there is probable cause for arrest, any argument that the arrestee's speech as opposed to his criminal conduct was the motivation for the arrest must fail, no matter how clearly that speech may be protected by the First Amendment. Id.

Further, the Plaintiff has not demonstrated, and cannot offer proof of a protected statement. It is axiomatic that a first amendment claim include clear evidence of speech.

The existence of cause for arrest defects the claim of first amendment retaliation.

## THE CONSPIRACY CLAIM DOES NOT SURVIVE

The Plaintiff alleges a conspiracy by the Defendants under 42 USC 1985 to deprive him of his constitutional rights, and that a meeting took place in which the Defendants hatched a conspiracy, but offers no particularity or substantive detail to these allegations. Conclusory allegations of a conspiracy are insufficient to state a claim under Section 1983. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). The Plaintiff's burden is not satisfied with "some metaphysical doubt" by "conclusory allegations" or a "scintilla of evidence" *Little v. Liquid Air Corp.* , 37 F. 3d 1069, 1975 (5th Cir. 1994) (citations omitted).

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (citation omitted). The 5th Circuit Court of Appeals has consistently required the claimants to state specific facts, and not merely conclusory allegations. *Morris v. City of Baton Rouge*, 761 F.2d 242, 244 (5th Cir. 1985) quoting *Ellio v. Perez*, 751 F. 2d 1472 1479 (5th Cir. 1985). The Plaintiff has failed to plead such facts, and

13

has offered no proof of such facts.

The Plaintiff's allegations amount to nothing more than a conclusory allegation of a conspiracy to catch someone in a criminal act. The Second Amended Complaint alleges that Sheriff Hamp discovered that Thompson's license was suspended, and that he then decided to arrest him. The Second Amended Complaint then alleges that Sheriff Hamp held a meeting with Captain Jones, where he planned to arrest Thompson. Yet, there is no proof of this plan. The facts alleged in the Second Amended Complaint offer no particularity or specific facts to indicate a conspiracy.

## IMPACT OF OFFICER REQUESTING THAT PLAINTIFF DRIVE

Perhaps the real center of this controversy rest in the allegation that that Captain Jones' induced Thompson to drive without a license, but this is not a constitutional violation. While entrapment may be a proper defense in a criminal action, an officer's participation in such activity does not, per se, constitute a constitutional violation. See *Stokes v. Gann*, 498 F.3d 483, 485 (5th Cir. 2007) (to the extent defendants actions constituted entrapment under state law, they do not by themselves constitute a violation of a constitutional right) citing *United States v. Russell*, 411 U.S. 423, 430, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973) (rejecting a criminal defendant's contention that his conviction violated the Constitution because law enforcement officials entrapped him, stating that government's conduct violated no independent constitutional right of the defendant); *Smith v. Lang*, 114 F.3d 1192 (7th Cir.1997) (even if a plaintiff prevailed on an entrapment defense at a criminal trial, there is no constitutional violation for § 1983 purposes); *Stobaugh v. Wood*, 107 F.3d 17 (9th Cir. 1997) (entrapment cannot serve as the basis of a federal habeas claim); *DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir.1996) (entrapment cannot be the basis for a § 1983 failure-to-train claim); *Giovanetti v. Tomasi*, 25 F.3d 1048 (6th Cir.1994); *Stevenson v. Bales*, 986 F.2d 1429 (10th Cir.1993) (no § 1983 claim because entrapment is not a constitutional violation); *Jones v.*

14

*Bombeck*, 375 F.2d 737 (3rd Cir.1967) (no cause of action under Civil Rights Act, which requires a constitutional violation, for entrapment).

The Fifth Circuit Court of Appeals has established that entrapment is not a constitutional violation in either a civil or criminal context. ***Stokes v. Gann***, 498 F.3d 483, 484, 2007 U.S. App. LEXIS 20735, 2-6 (5th Cir. Miss. 2007). In ***Stokes***, a hunter charged with head lighting deer alleged that he had been pressured and assisted in doing do so by an employee of the Mississippi Department of Wildlife, Fisheries, and Parks. *Id.* at 484. The Court noted the Supreme Court's decision in ***United State v. Russell***, in which entrapment by government officials violated no independent constitutional right of the defendant. 411 U.S. 423, 440 (1973). The Court of Appeals for the Fifth Circuit agreed that ***Russell's*** edict applied in the civil context as well.

Captain Jones informed Mr. Wiley that there was an issue with his license, that it might be suspended. Jones asked about the status of Thompson's license, and was not told it was suspended. After Mr. Thompson began driving the car, Jones pulled him over and arrested him for driving with a suspended license. There is no allegation that Thompson objected to driving or even informed that he had unpaid tickets in Montgomery County. This was simply a decision by the Plaintiff to ignore the law (or was ignorant of it) and drive on his suspended license.

## IN THE EVENT THE COURT PERMITS THE PLAINTIFF
## TO REVIVE HIS SEIZURE AND ARREST CLAIMS,
## THEY STILL DO NOT SURVIVE SUMMARY JUDGMENT

The claims of a violation of his right to be free from unlawful stop and seizure, and the right to be free from unlawful arrest have been abandoned in prior pleadings, but in the event the court allows further consideration, these must find as well.

### A Reasonable Suspicion To Stop Existed

15

The Fourth Amendment claims are first dependent on the reasonableness of the vehicle stop made on the night of February 12, 2014. The Wiley stop is not at issue in this case, as it is undisputed that he was observed weaving across lanes. The issue before this court is whether there was a reasonable suspicion that Thompson was driving on a suspended license when he was stopped.

The Plaintiff claims that he violated no traffic laws before he was pulled over. However, as admitted in deposition and the Complaint admits, at paragraph 11, that "... Mr. Thompson's license was suspended because of an unpaid ticket in Montgomery County, MS." The fact is undisputable, that on the date of the arrest, Mr. Thompson drove on a suspended license. It is also undisputed that Jones was aware of this, and therefore had reason to believe that a crime was committed in his presence by Thompson.

## Probable Cause to Arrest Existed

As it relates to the actual arrest, the question of probable cause must be answered in the affirmative if the officer reasonably believed that a crime had been committed in his presence. As applied to officers with potential qualified immunity defense immunity " the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (citing *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009); *Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *C.H. v. Rankin County Sch. Dist.*, 2011 WL 788908, 415 Fed. Appx. 541, 2011 U.S. App. LEXIS 4494 (5th Cir. Mar. 4, 2011) (quoting *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006)). The undisputed facts and the allegations of the Second Amended Complaint make it clear that the deputy knew that plaintiff had a suspended

16

license, and that Thompson drove. A crime was committed in Jones' presence.

The issue of a warrant is irrelevant, as the Captian arrested Thompson for driving without a license. The Plaintiff may claim that he could only have be arrested on a warrant and therefore suggests that the arrest, and being placed in jail pending bond, was somehow in violation of his Fourth Amendment Rights. Yet, as the Plaintiff agrees at paragraph 26 of his second amended Complaint, probable cause would substitute for a warrant, and as described above such probable cause existed.

The fact that the crime was not a serious offense does not mean that the Plaintiff was free from physical arrest. Consider ***Atwater v. Lago Vista***, 532 U.S. 318 (2001), wherein the United States Supreme Court held that a person's Fourth Amendment rights are not violated when the subject is arrested for driving without a seatbelt. The Court ruled that such an arrest for a misdemeanor that is punishable only by a fine does not constitute an unreasonable seizure under the Fourth Amendment. Id. Being arrested for driving on a suspended license does not create a constitutional violation.

Significantly absent in the Second Amended Complaint is the Plaintiff's guilty plea, signed when he bonded out of jail after being booked on February 13, 2014, the day of his arrest. (Exhibit "E"). The admission of guilt, despite the subsequent finding of not guilty, certainly affirms the existence of probable cause.

## NO "CLEARLY ESTABLISHED" RIGHT

## HAS BEEN IMPLICATED.

Recalling that qualified immunity requires that the parameters of the rights should be sufficiently clear so that any officer would know that a right was being violated. (***Taylor v. Bankos***, 135 S.Ct. 2042, (2015)). The rights suggested by Plaintiff involve no clear precedent or

understandable continuity of thought, that satisfies the "clearly established" requirement.

Both Hamp and Jones are named as individuals names in the suit are entitled to the benefit of the plaintiff identifying clearly established rights. These claims have not been defined well by the Plaintiff, and an officer under similar circumstances can not be said to be on notice of prohibited behavior. This case simply cannot proceed against the individually named defendants.

## DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE STATE LAW CLAIMS REGARDLESS OF ALLEGATION OF MALICE.

The remaining claims against Defendants are state law claims, and must be considered under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq., which provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit. *Lang v. Bay St. Louis/ Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999). As these Defendants were acting pursuant to and within the scope of their employment, they are immune from individual liability. And, as the Second Amended Complaint describes, these were officers in the Tunica County Sheriff's Department, a title placing him within the scope of his employment on questions of arrest and seizure.

The "exclusive remedy" portions of the MTCA provide in pertinent part a follows:

> (1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee . . . for the act or omission which gave rise to the claim or suit; ....

Miss. Code Ann. § 11-46-7(1).

The MTCA is the sole authority - statutory or otherwise - governing the rights and liabilities of the parties as to the plaintiffs' state law claims. According to § 11-46-5 of the MTCA:

> (2) For the purposes of this chapter an employee shall not be

18

considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

(3) For the purposes of this chapter and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment.

Miss. Code Ann. § 11-46-5. (see also 11-46-7).

Under Mississippi law, one who is performing his job duties as a governmental employee is not subject to personal liability. ***Roderick v. City of Gulfport***, 144 F. Supp.2d 622 (S.D. Miss. 2000); ***Conrod v. Holder***, 825 So.2d 16 (Miss. 2002).

These Defendants were acting within the course and scope of their employment, they cannot be held liable in their individual capacity on the basis of the Plaintiff's state law claims, of 1) Abuse of Process, 2) False Arrest, 3) False Imprisonment, 4) Intentional Infliction of Emotional Distress, and 5) Civil Conspiracy.

Quite simply, the Defendants cannot be held individually liable for these acts presumptively occurring the course and scope of employment.

The alleged actions are also entitled to the immunity under 11-46-9 of the MTCA. More specifically, Mississippi Code Section 11-46-9(1), provides that a "governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable..." for any claims as more fully stated thereunder. If any one of the listed immunity provisions applies, then there can be no liability.

Although he never uses the term 'malice' in the Second Amended Compliant, in support of the denial of immunity, Plaintiff previously cites the Northern District's decision in ***Papagolos v.***

19

*Lafayette County Sch. Dist.*, wherein the Court determined that a claim of malicious interference with contract fell outside of the purview of the Act. (Response at 16.) The significant distinction in *Papagotos* is this it involved a claim for malicious interference with contract, a tort which contained **malice as an essential element**. 972 F. Supp .2d 912, 835 (N.D. Miss 2013). The Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA under § 11-46-5(2). See *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688-89 (Miss. 2009). It follows that those torts without malice, and otherwise not listed, are necessarily included under the MTCA. There is no recognized tort that is simply called "malice", and the state law claims levied by Thompson for abuse of process and intentional infliction of emotional distress, do not include malice as an essential element. Both of these claims fall within the protection of the Mississippi Tort Claims Act.

### *Abuse of Process*

The Plaintiff does not plead within the Second Amended Complaint that the cause of action for Abuse of Process was committed with malice, it is therefore within the MTCA grant of immunity to the individuals. (11-46-5 and 11-46-7).

Further, abuse of process occurs when (1) a party makes an illegal use of a legal process, (2) the party has an ulterior motive, and (3) damage results from the perverted use of process. *Ayles ex rel. Allen v. Allen*, 907 So.2d 300, 303 (Miss. 2005). Regardless of the existence or non-existence of malice, as described above the undisputed existence of probable cause necessarily implies that the there was a legal use of a legal process. The absence of a necessary element prohibits the Plaintiff from asserting this state law claim.

### *Intentional Infliction of Emotional Distress*

The Plaintiff has not pled that the intentional infliction of emotional distress is predicated on

malice, and in the absence of proof of malice on this claim, the Mississippi Tort Claims Act prohibits a claim directly against the individual Defendant. (11-46-5 and 11-46-7).

Further, in order to prevail on a claim for intentional infliction of emotional distress, the severity of the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (¶18) (Miss. 2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). In cases involving intentional infliction of emotional distress, the plaintiff must prove the defendant's conduct "was wanton and willful and evoked outrage or revulsion." *Riley v. F.A. Richard & Assocs., Inc.*, 16 So. 3d 708, 719 (P33) (Miss. Ct. App. 2009). Generally, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." Id. at 630 (¶19) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). It is not extreme, nor outrageous, nor beyond all possible bounds of decency to arrest a driver with a suspended license. This claim must fail.

### *False Arrest and False Imprisonment*

To establish a claim of false arrest or false imprisonment, a plaintiff must prove that the Defendant caused him "to be arrested falsely, unlawfully, maliciously, and without probable cause." *Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 75 (Miss. Ct. App. 2005)(citing *City of Mound Bayou v. Johnson*, 562 So. 2d 1212 (Miss. 1990)). See also *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 728-29 (Miss. 1989). Where probable cause exists for an arrest, there can be no false arrest claim. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Plaintiff has failed to prove (or even allege) that the Jones lacked probable cause or the Hamp was present. Further, the arrest in and of itself was lawful.

The state law claims must be dismissed.

21

For any other state law claim, and which falls outside of the Tort Claims Act, are prohibited from litigation under the one year statute of limitations under miss. Code § 15-1-35.

## CONCLUSION

This case is a good example of the type of claim that the defense of Qualified Immunity is intended to prevent.   The plaintiff has be unable to articulate the nature of the right at stake, such that it can not be said that any right at issue was clearly established.   For the foregoing reasons, the Defendant, moves this Court to grant summary judgment from all claims, and for such other relief as is just.

RESPECTFULLY SUBMITTED, this the 22nd day of December, 2016.

**CALVIN HAMP AND
JAMES JONES, DEFENDANTS**

By: /s/ Michael J. Wolf_____
      Michael J. Wolf

OF COUNSEL:

MICHAEL J. WOLF – MSB # 99406
PAGE, KRUGER & HOLLAND, P.A.
P.O. Box 1163
Jackson, Mississippi 39215-1163
T: 601-420-0333
F: 601-420-0033
Email: mwolf@pagekruger.com

22

## CERTIFICATE OF SERVICE

I, the undersigned attorney for Defendant, do hereby certify that I have this day filed and caused to be sent to all counsel of record, a true and correct copy of the foregoing document via the ECF system.

This the 22nd day of December, 2016.

/s/ Michael J. Wolf
Michael J. Wolf