IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MICHAEL THOMPSON                                                                           PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:14cv274-NBB-SAA

CALVIN HAMP, in his individual capacity;
JAMES JONES, in his individual capacity;
and UNKNOWN DEFENDANTS
"A", "B" AND "C"                                                                           DEFENDANTS

### DEFENDANT JAMES JONES' and DEFENDANT CALVIN HAMP'S REPLY TO RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendants, and each of them, in the above referenced cause and file this reply to the plaintiff response to summary judgment, to wit:

The Plaintiff's Response highlights that the theory of liability has once again changed, as the due process "shocks the conscious" claim which was previously argued to this court is no longer being asserted, in favor of a once abandoned "Probable Cause" argument. In continuing to change the theory of liability, the defendants are uniquely able to point to the very reason Qualified Immunity exists as a right to not stand trial. The Plaintiff consistently fails to point to a clearly established constitutional right, where the parameters are such that every reasonable officer would understand that a right was violated. In fact, the very confusion over what constitutional theory drives this case highlights that a reasonable officer would not know that a right is being offended when trained legal minds don't find specific cases where that right has similarly been applied.

As the US Supreme Court stated in *Anderson v. Creighton* 483 U.S. 635 (1987), when referring to qualified immunity: "The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a

1

sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." … It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell*, supra, at 535, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (Citing *Harlow v. Fitzgerald* 457 US 800 (1982); *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

The Plaintiff's Response avoids the necessary particularized standards required in immunity analysis.

Additionally, the plaintiff references Exhibits "A" through "F" in the response, yet did not include theses Exhibits. (If these Exhibits are supplemented, the defendants reserve the right to supplement this reply). In the absence of any exhibits to the contrary the only events supported by

2

evidence before the court are the defendants' undisputed facts which supports dismissal.

## PROBABLE CAUSE FOR ARREST

Returning to the initially pled, then abandoned, theory that there was no probable cause to arrest, the plaintiff misapprehends the proper analysis when qualified immunity exists.

It cannot be disputed that a traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. ***Brendlin v. California***, 551 U.S. 249, 255-259, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Presumptively, the parties agree that to justify a stop, officers need only "reasonable suspicion", or more precisely "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. ***Prado Navarette v. California***, 134 S. Ct. 1683, 1688, 188 L. Ed. 2d 680, 686 (2014) Further reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. ***Heien v. North Carolina***, 135 S. Ct. 530 (2014). In this instance there is reasonable suspicion that the plaintiff was driving with a suspended license.

"Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law." *Id.* The Wiley stop is not at issue in this case, as it is undisputed that he was observed weaving across lanes. The issue before this court is whether there was a reasonable suspicion that Thompson was driving on a suspended license when he was stopped. It is undisputed that Mr. Thompson's license was suspended, and that the arresting officer had some awareness of

3

this fact.

As it relates to the actual arrest of Thompson, the question of probable cause must be answered in the affirmative if the officer reasonably believed that a crime had been committed in his presence. As applied to officers with potential qualified immunity defense immunity " the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010) (citing *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009); *Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *C.H. v. Rankin County Sch. Dist.*, 2011 WL 788908, 415 Fed. Appx. 541, 2011 U.S. App. LEXIS 4494 (5th Cir. Mar. 4, 2011) (quoting *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006)). The undisputed facts and the allegations of the Second Amended Complaint make it clear that the deputy knew that plaintiff had a suspended license, and that Thompson drove. A crime was committed in Jones' presence. The fact that the crime was not a serious offense does not mean that the Plaintiff was free from physical arrest. (See *Atwater v. Lago Vista*, 532 U.S. 318 (2001)).

Further, two judges have already had the opportunity to consider the question of probable cause, in the Justice Court and at the Circuit Court. Though the plaintiff was successful on appeal, there was no finding that probable cause to arrest did not exist. Where a judge did not clearly determine that probable cause was lacking, an officer can likewise be forgiven if he was wrong.

## NO FIRST AMENDMENT CLAIM

While the Plaintiff has argued his first amendment claim from the initial pleadings, he has yet to demonstrate how this claim is actually implicated in this action. A plaintiff cannot state a

4

claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause. *Reichle v. Howards*, 132 S. Ct. 2088 (2012)

As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech. But the right allegedly violated must be established, " 'not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam), but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official, *Anderson*, supra, at 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523. Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause. The United States Supreme Court has never held that there is such a right. *Riechle*

It follows from the fact that there was probable cause for the arrest that the arresting officer has qualified immunity as to any claim plaintiff may be making for retaliatory arrest in violation of the First Amendment. See *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (holding that a "First Amendment right to be free from a retaliatory arrest that is supported by probable cause" has never been a clearly established right); *Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding that the defendant was entitled to qualified immunity on First Amendment retaliatory arrest claim because the plaintiff "has not demonstrated that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause"); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (explaining that "[i]f probable cause existed, ... or if reasonable police officers could believe probable cause existed," then officers are entitled to qualified immunity on claim for retaliatory seizure); *Brooks v. City of West Point*, 18 F. Supp. 3d 790, 797 (N.D. Miss. 2014) (dismissing individual capacity claim against officers for retaliatory arrest where there was probable cause for the arrest). The arrest of the Plaintiff was made

with probable cause, and therefore no separate claim might be made on a first amendment basis.

### THE PLAINTIFF HAS NOT RESPONDED TO STATE LAW IMMUNITY

The response does not challenge the state law immunity. As such that immunity must be granted.

WHEREFORE premises considered, the defendants respectfully submit that the dismissal of the claims against them are proper and appropriate under the circumstances.

RESPECTFULLY SUBMITTED, this the 17 th day of January, 2017.

**CALVIN HAMP AND
JAMES JONES, DEFENDANTS**

By: /s/ Michael J. Wolf
Michael J. Wolf

OF COUNSEL:

MICHAEL J. WOLF – MSB # 99406
PAGE, KRUGER & HOLLAND, P.A.
P.O. Box 1163
Jackson, Mississippi 39215-1163
T: 601-420-0333
F: 601-420-0033
Email: mwolf@pagekruger.com

6

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney for Defendant, do hereby certify that I have this day filed and caused to be sent to all counsel of record, a true and correct copy of the foregoing document <u>via the ECF system</u>.

This the <u>17th</u> day of January, 2017.

<u>/s/ Michael J. Wolf</u>
Michael J. Wolf
