Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 51

1      A.    He was.

2      Q.    Didn't he become county administrator in

3 December 2013?

4      A.    Not that I know of.  He was county

5 administrator then.

6      Q.    In December 2013?

7      A.    Yes.  He was county administrator in

8 December.  I'm looking at my dates.  December '13.

9 Yes.

10      Q.    When did he become the county

11 administrator; Mr. Thompson?

12            MR. WOLF:  Objection.  Asked and

13 answered.

14      A.    When they hired him in December 2013.

15 Isn't that what you just said?

16      Q.    (Mr. Tanner)  All right.  So in December of

17 2013 -- no.  What you said, sir, was that he was the

18 county administrator then.  My question was more

19 narrow.  When did they name him county administrator?

20 But now you're saying December 2013?

21      A.    They hired him, it was in the month of

22 December, I believe.

23      Q.    Of 2013?

24      A.    I believe it was.

25      Q.    All right.  He was arrested February 12th

1   of 2014, right?

2       A.   That's correct.

3       Q.   That's only a month and a half, two months,

4   right?

5       A.   That's correct.

6       Q.   So this disagreement that y'all had had to

7   have occurred in only a two-month span at most,

8   right?

9       A.   I mean, December, February.  He was hired

10  in December.  He was arrested what, in February?

11  Yeah.

12      Q.   All right.  So would you quarrel with me if

13  I said that this disagreement that y'all had in

14  Michael Thompson's office, county office, occurred

15  either the last week of January or the first week of

16  February 2014?

17      A.   I don't recall.  I know it was probably --

18  had to be in January sometime.

19      Q.   January of 2014?

20      A.   I suppose.  Yes, sir.

21      Q.   All right.  And less than a month after

22  that Michael Thompson was arrested when you called

23  Montgomery County and was told that he had a warrant?

24      A.   Michael Thompson's arrest came upon the

25  background checks of driver's licenses that raised a

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 53

1    flag that he had a warrant in Montgomery County.  It

2    didn't have anything to do with me, sir.

3        Q.    Okay.  When was it that Captain James Jones

4    told you that Michael Thompson's license was

5    suspended?

6        A.    It probably -- the evening of the 11th or

7    the morning of the 12th and I called to ask about did

8    he have a warrant in Montgomery County.  As sheriff,

9    yes, I called.

10       Q.    Was Michael Thompson the county

11   administrator when you initiated your investigation

12   of his business dealings with Alex Wiley?

13       A.    No, sir.  He wasn't county administrator

14   then.

15       Q.    Okay.  At that time he was in what

16   position?

17       A.    Auditor.  It was during the end of that

18   year, he was auditor, a lot of flags were being

19   raised.  I have to reflect back on my records.

20   Because the contract -- Thompson was hired in

21   December and the contract was given in December or

22   January to his business partner and citizens of the

23   county raised concerns that Wiley was his brother.

24       Q.    All right.  Do you know who these citizens

25   were?

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

1    A.    I have to look at my notes or reflect on

2    that.

3    Q.    Okay.  Let's stop right here.  Earlier you

4    said you were looking into whether Michael Thompson

5    had given a contract to his brother, right?

6    A.    Uh-huh (Indicating yes).

7    Q.    You have to answer verbally.

8    A.    Yes.

9    Q.    And the concern or question was that Alex

10   Wiley was Michael Thompson's brother?

11   A.    Brother or business partner.  And that's

12   when we looked at the website and saw the Thompson

13   and Wiley business consulting firm that they had

14   together showing Wiley being the CEO of the company

15   and Thompson being a partner and officer of the

16   company.

17   Q.    When was that company created?

18   A.    I don't know, sir.  It's a long list of --

19   it's a bucket list of things.  I mean, I have to

20   refer you to the notes.

21   Q.    All right.  Now, do you manage any

22   detectives?

23   A.    I do.

24   Q.    Did you ever work as a detective?

25   A.    I do -- I did.

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

1       Q.    So you've conducted investigation?

2       A.    I'm a law enforcement officer, sir.  I have

3   no limits.

4       Q.    I believe you, sir.  My question though is

5   whether you've conducted any investigations?

6       A.    I have.  A number of them.

7       Q.    And you know in order to do an

8   investigation well you have to be very thorough?

9       A.    Absolutely.

10      Q.    You have to be very detail oriented, right?

11      A.    Absolutely.

12      Q.    You have to make sure T's are crossed and

13  I's are dotted; is that right?

14      A.    That's correct.

15      Q.    All right.  When you travel on documents,

16  for example, you have to make sure that those

17  documents are valid and truthful, right?

18      A.    That's correct.

19      Q.    Otherwise, you could make mistakes if you

20  travel on invalid or untruthful documents; is that

21  right?

22      A.    Human error will occur.

23      Q.    How many times did you discuss with

24  Mr. Thompson his idea to cut your budget?

25      A.    I only had one conversation with

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 56

```
 1   Mr. Thompson.

 2        Q.   Did you discuss --

 3        A.   I did not discuss anything.  Mr. Thompson

 4   wanted to talk about budgets and I did not go there

 5   with him because I know who is in charge of my

 6   budget.  That's the sheriff have the exclusive

 7   authority and I deal with the board of supervisors

 8   who have the authority to increase or decrease the

 9   budget at any given time.  And the law and statutes

10   support me.

11        Q.   Did you follow up with anybody, sir, about

12   whether Mr. Thompson -- you know, did you report that

13   to anybody, that you --

14        A.   I don't have to.  I didn't have to.  No,

15   sir.

16        Q.   The question is whether you did, not

17   whether you had to.  Did you discuss with anybody

18   your conversation with Mr. Thompson wherein you say

19   he brought up your budget?

20        A.   No, sir.

21        Q.   Did you ever hear from anyone other than

22   Mr. Thompson that Mr. Thompson was proposing cutting

23   your budget?

24        A.   No, sir.

25        Q.   All right.  Do you know whether -- so you
```

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

1  had no clue other than this one conversation with

2  Mr. Thompson that he had proposed to the board budget

3  cuts?

4       A.    That was it.

5       Q.    Okay.

6       A.    Which didn't have anything to do with my

7  office.

8       Q.    Excuse me?

9       A.    Which didn't have anything to do with my

10 office.  I have to submit my own budget according to

11 the law, not the county administrator.  So I had that

12 knowledge.  He did not.  So that's why I didn't take

13 that conversation up with him.

14      Q.    Do you know what exactly the county

15 administrator's job is?

16      A.    His job is to oversee the county operations

17 for the board of supervisors.

18      Q.    Do you know if part of his job entails

19 giving advice to the board of supervisors?

20      A.    Yes.  He give advice to the board of

21 supervisors.  Yes, sir.

22      Q.    Do you know if he reports to the board of

23 supervisors?

24      A.    As county administrator job description,

25 his job is to report to the board of supervisors.

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 58

1    That's who he work for.

2        Q.    And who is it that determines your budget,

3    sir?

4        A.    The board of supervisors.

5        Q.    And in order to get a budget approved, what

6    do you have to do, sir?

7        A.    I create my budget as sheriff, my itemized

8    expenses.  I meet with my board of supervisors and I

9    present that budget to the board of supervisors, not

10   the county administrator.

11       Q.    And then what do the county administrators

12   do at that point?

13       A.    I guess he do what the board of supervisors

14   ask him to do.

15       Q.    Once you present your proposed budget to

16   the county board of supervisors, what does the county

17   board of supervisors do with that proposed budget

18   that you give them?

19       A.    In an open meeting they approve to adopt or

20   they can do a reduction in an open meeting voted upon

21   by all five members of the board, not the county

22   administrator.

23       Q.    But the county administrator's job is to

24   advise them?

25       A.    Advise them.  I have no idea -- I don't

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 59

1    want to confuse -- what I'm trying to tell you, I

2    don't have no idea of the mechanics of the board of

3    supervisors' conversation with the county

4    administrator.  I can tell you what my job is as far

5    as having authority over the sheriff's office and

6    producing the budget to the county board.

7         Q.   Do you have authority over the Tunica

8    County jail?

9         A.   I do, sir.

10        Q.   Okay.  All right.  So tell us what an

11   appearance bond is.  Do you know what an appearance

12   bond is?

13        A.   An appearance bond or a release on own

14   recognizance bond?

15        Q.   Both.  Do you know what either of those

16   terms mean?

17        A.   Yes, sir.  Ensure that that person,

18   arrestee, will appear in court after they make bond.

19        Q.   Do you have the authority to issue bonds?

20        A.   I have the authority to release a person on

21   their own recognizance.  I don't issue bonds or set

22   bonds.  The court sets bonds.

23        Q.   Okay.  And on what kind of cases do you

24   have the authority to release people on their own

25   recognizance?

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

```
 1          A.    Come again with that question.
 2          Q.    In what circumstances do you have the
 3    authority to release people on their own
 4    recognizance?
 5          A.    When I feel that I can vouch for that
 6    person to appear in court.
 7          Q.    On any kind of case?
 8          A.    Most of them are misdemeanor cases.  Yes,
 9    sir.
10          Q.    Driving on a suspended license, is that a
11    misdemeanor?
12          A.    Yes, it is.
13          Q.    Now, when you say -- in response to my
14    question about whether you have the authority to
15    issue -- to allow people to be released on their own
16    recognizance, you said that, you know, based on
17    whether you think the person will appear for court;
18    is that fair?
19          A.    Yes.
20          Q.    What do you look at to determine that?
21          A.    If a person calls and asks me, if they need
22    some type of assistance or cannot afford a bond and a
23    family member or so asks me can I help them, I would
24    in the past, I will release someone on their own
25    recognizance and assure that they appear in court.
```

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 61

1    Q.    Do you consider any other factors of
2  whether somebody should be released on their own
3  recognizance?
4    A.    It depends on who asks me on a case-by-case
5  basis.
6    Q.    On a case-by-case basis, what factors do
7  you look at?
8    A.    Whether or not I know that person, and if
9  they reside here and I can vouch for them that they
10 will appear in court.
11   Q.    Do you consider their criminal history or
12 lack thereof?
13   A.    I have and have not.  That's a two-part
14 answer.  I have and have not.  Depends on if I have
15 knowledge of the person.
16   Q.    Okay.  So if somebody has an aggravated
17 assault or a felony fleeing in their past, you
18 wouldn't consider them any different than a person
19 who does not in terms of whether you would give them
20 a bond or release them on their own recognizance?
21   A.    I have released people on their own
22 recognizance that have had a background or a prior
23 arrest.  I have.  It has been considered.  Yes, sir.
24   Q.    Okay.  Did you give Mr. Thompson -- did you
25 release Mr. Thompson on his own recognizance?

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 62

1      A.    I did not.  Because Mr. Thompson, it was

2  told to me that Mr. Thompson said that he felt ill

3  and my officers called the EMS on property to check

4  him out.  I think it was reported to me that he was

5  okay and vitals checked out to be fine or something.

6  But by him saying that he was ill, they were

7  instructed to take him to the doctor, to the

8  hospital.

9      Q.    Uh-huh (Indicating yes).  So if you

10  released him on -- when you release somebody on their

11  own recognizance, all you're doing is saying that

12  they can be released, right?

13      A.    Yes.  And they sign -- they pay a $25 jail

14  fee.  They have to pay a $25 jail fee.

15      Q.    All right.  But you released -- you

16  authorized them to be released on their own

17  recognizance first; is that right?

18      A.    Right.

19      Q.    But they're not going to be released until

20  they sign and pay the $25 fee.

21      A.    That's correct.

22      Q.    All right.

23      A.    Unless they are a pauper or something like

24  that, or indigent, you know.

25      Q.    Sure.

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 63

1    A.   Yes.

2    Q.   But in this case you didn't authorize

3  Michael Thompson to be released, regardless of his

4  health condition, you didn't authorize him to be

5  released on his own recognizance?

6    A.   Not at that point because Mr. Thompson

7  said -- number one, it wasn't asked.  Well,

8  Mr. Pittman said that we need to release him.  I

9  spoke with him on the phone.

10   Q.   When you say him, who do you mean?

11   A.   Michael Thompson.  And it was told to me

12 that he was sick, we wanted to get the paramedics to

13 check him out, get him to a doctor with the fear of

14 him saying that he was not provided medical

15 attention.  So it was a good faith effort that we had

16 him to go to be checked out by a licensed physician.

17   Q.   Did you ever release him on his own

18 recognizance?

19   A.   No.  He paid a bond.

20   Q.   Isn't that something you normally do in

21 these situations?

22   A.   I normally would do it.

23   Q.   But you didn't in this one?

24   A.   Number one, I wasn't asked.  I was never

25 asked for a recognizance.  In the past there have

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 64

```
 1    been citizens that have been arrested who have asked
 2    for a recognizance, I have.  Two, I wasn't asked.
 3    Three, Mr. Pittman was the county attorney, who is
 4    now deceased, he came in and represented in such a
 5    fashion for Mr. Michael Thompson.  So it's safe to
 6    say he helped cloud the water of the arrest.
 7         Q.  What does that mean?
 8         A.  That means that I have video and audio of
 9    Mr. Pittman telling Michael Thompson in so many words
10    he needs to come by his home so he could, I guess,
11    prepare to sue the county.
12         Q.  So because Mr. Thompson hired a lawyer --
13         A.  He did not hire a lawyer.  Our county
14    attorney came up here representing him.  He acted as
15    though he was his representative.  And it's all on
16    tape.  We have a video of that.
17         Q.  Because Mr. Thompson -- I mean, Mr. Pittman
18    came up and talked to him.  Do you know if there's
19    anything preventing Mr. Pittman from representing
20    Mr. Thompson in any way?
21         A.  Yes.
22         Q.  What?
23         A.  A conflict of interest.  He's the county
24    administrator and he's the -- he was the county
25    attorney, which he cannot solely come and represent
```

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 65

1    the county administrator without acting on the

2    authority of the board of supervisors at that point

3    in time, all members.

4         Q.    You're Mr. Calvin Hamp, sheriff of Tunica

5    County, are you not?

6         A.    Right.

7         Q.    And you are at the same time separately,

8    right?

9         A.    Right.

10        Q.    Mr. Calvin Hamp, the individual, that has

11   nothing to do with Tunica County; is that right?

12        A.    Right.  You can call me Kacey.

13        Q.    That's fair.  Now, that same principle

14   applies to Michael Thompson.  He's the county

15   administrator but he's also a private human being,

16   right?

17        A.    Right.

18        Q.    Private citizen of this country, right?

19        A.    Right.

20        Q.    As was Ellis Pittman.  He was the county

21   attorney but he's also a private individual, right?

22        A.    Right.

23        Q.    All right.  If Ellis Pittman thought that

24   whatever had been done by Mr. Jones or what have you

25   was outside of him acting in his capacity with the

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 66

1   county, he could have come to the jail and advised

2   Mr. Thompson; is that right?

3                MR. WOLF:  Objection.  Calls for a

4   conclusion of law and an ethics opinion.

5                MR. TANNER:  That's fair.

6        Q.   (Mr. Tanner)  All right.  So my question

7   here is whether -- in what way did Mr. Pittman's

8   involvement in Mr. Thompson's case impact your

9   decision to give Mr. Thompson a bond or release him

10  on his own recognizance?

11       A.   I guess what I received from the office,

12  his conduct when he got here, I guess I believe then

13  he was threatening to get the media involved or

14  something like that, acting as though he was

15  representing him, telling him to come by his office

16  or his house when he make bond, he is going to refer

17  him to a lawyer.  That's what we picked up on audio

18  and video.

19       Q.   So what he said was that he was going to

20  refer him to a lawyer?

21       A.   That's what we picked up on audio and

22  video.

23       Q.   That Mr. Pittman said he was going to refer

24  him to a lawyer, not that he was going to represent

25  him?

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page  67

1              THE WITNESS:  Do you mind if I read my
2   document?

3              MR. WOLF:  No.  Just answer.  If you
4   can't recall you can't recall.

5       A.    I can't recall.  But he showed up in a
6   fashion representing Michael Thompson.

7       Q.    (Mr. Tanner)  All right.  And so based on
8   whatever fashion you're referring to, you thought
9   that something that weighed against your releasing
10  Michael Thompson on his --

11      A.    Nothing weighed against my releasing him.
12  I was never asked to.  And when a man says that he's
13  sick, our job is to provide healthcare for the guy,
14  whomever get arrested.  Even today if someone in the
15  jail say, hey, they feel bad, our policy is they need
16  to call the EMTs over to check the person out.  If
17  that person needs to be transported to the doctor, we
18  transport them to the doctor.

19      Q.    Okay.  So it was your department that
20  actually had Michael Thompson transported to a
21  medical facility?

22      A.    That's correct.  Based upon him -- we
23  didn't want to refuse the man medical treatment once
24  he said that -- and that's with anybody back there
25  again.  A person says they're sick we're not going to

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 68

1    refuse them medical treatment.  We're going to call

2    the ambulance service over to see would they

3    transport the person.  I'm not going to give no

4    specific name of the ambulance service because they

5    do change up.

6        Q.   Sure.

7        A.   But if one say he or she is sick, then

8    their responsibility of the jail is to call the

9    emergency medical service out, the responsibility of

10   the jail is to call the emergency medical service

11   group out to care for the person as well as check

12   their vitals and see what's going on with them.  If

13   that person needs to be transported, then they have

14   to transport that person.  That particular night,

15   Michael Thompson was not transported and officers

16   took him to the hospital.

17       Q.   The officers took him to the hospital?

18       A.   Right.  I think the officer took him to the

19   hospital.

20       Q.   Which officer was this?

21       A.   The transportation officer -- well, it was

22   the warrant officer at the time.  The warrant

23   officer.  If my memory serve me correctly, it was

24   Lieutenant Hobson transported him to Baptist DeSoto

25   Hospital.  That would have affected him bonding right

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 69

1    out then because he said he was sick.

2         Q.    Okay.

3         A.    So we wanted to make sure that he was seen

4    by a licensed physician, a doctor.

5         Q.    Okay.  But you didn't call the ambulance,

6    right?

7         A.    They called the ambulance.  When he said he

8    was sick they called.  And the ambulance reported on

9    the property.  Emergency medical service reported on

10   the property.  They checked him out and checked his

11   vitals, what have you.

12        Q.    But then you still felt it necessary to

13   take him to the hospital even though the --

14        A.    He said he continued to feel bad after the

15   booking process was taking place and they transported

16   him to the hospital.

17        Q.    Okay.  This lieutenant who transported him

18   to the hospital, is this a licensed medical

19   professional?

20        A.    No.  He's not a licensed medical

21   professional, but we do transport people to the

22   hospital.

23        Q.    Is he an EMT or somebody, something like

24   that, the transport officer?

25        A.    No, he's not.



Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 70

1      Q.   How long was Mr. Thompson in your jail,
2  sir?
3      A.   I don't know.  It wasn't long.  Because
4  most of the time was spent at the hospital that
5  morning.  And when he came they finished processing,
6  he bond right out.  So he wasn't in the jail long.
7  After the arrest was affected, Mr. Thompson was --
8  shortly after he was transported to the hospital
9  because he say he felt bad.  All that time Michael
10  Thompson was at the hospital, Baptist DeSoto
11  Hospital.  When he came back he made his bond.
12     Q.   Who did he tell that he felt bad at the
13  jail?
14     A.   Whatever officer was on duty, sir.  I can't
15  recall.
16     Q.   Do you know who's your cell phone provider
17  for your county-issued phone?
18     A.   It was C Spire.
19     Q.   C Spire?
20     A.   Uh-huh (Indicating yes).
21     Q.   Is it still C Spire?
22     A.   Yes.  Been having the same number forever.
23  We haven't changed.
24     Q.   All right.  Now, the fleet safety
25  management policy, did the county adopt that policy?

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

```
1         A.    It's through our insurance company.
2    Everybody have to adopt it.  It's through the
3    insurance company.  Everybody have to be in line with
4    the fleet safety policy for liability purposes.
5         Q.    And that was in place before you got here?
6         A.    Oh, yes.
7         Q.    So when you were a deputy, for example,
8    that policy was in place?
9         A.    Yes.  We had to turn in our license to be
10   ran when the sheriff -- even before I was hired, had
11   to run checks on everyone's license.  After I was
12   elected I took a step farther to get license and
13   insurance.
14        Q.    You did what now?
15        A.    Took it a step farther to get license and
16   insurance.  I mean, knowing personnel would report
17   here that didn't have a valid insurance card, whether
18   it be a deputy or a civilian, if we're going to
19   enforce the law we enforce the law to everyone.
20                   MR. TANNER:  Mr. Wolf, I pass the
21   witness.
22                        EXAMINATION
23   BY MR. WOLF:
24        Q.    Just one quick question.  The requirement
25   of a license and insurance, is that in the sheriff's
```

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 72

1  department only or is it county wide?

2      A.   License and insurance with both sworn and

3  civilian is in the sheriff's office only.  But the

4  driver's license check with all other county

5  personnel that operate county vehicles under safety

6  management is only their personnel and only their

7  driver's license.

8              MR. WOLF:   No further questions.

9  Thank you.   You're done.

10             (Deposition concluded at 3:36 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 73

```
 1              C E R T I F I C A T E
 2   STATE OF MISSISSIPPI      )
 3   COUNTY OF LEE             )
 4   RE:  ORAL DEPOSITION OF SHERIFF CALVIN K. HAMP, SR.
 5        I, Regina D. Russell, RPR, CCR 1110, a Notary
 6   Public within and for the aforesaid county and state,
 7   duly commissioned and acting, hereby certify that the
 8   foregoing proceedings were taken before me at the
 9   time and place set forth above; that the statements
10   were written by me in machine shorthand; that the
11   statements were thereafter transcribed by me, or
12   under my direct supervision, by means of
13   computer-aided transcription, constituting a true and
14   correct transcription of the proceedings; and that
15   the witness was by me duly sworn to testify to the
16   truth and nothing but the truth in this cause.
17        I further certify that I am not a relative or
18   employee of any of the parties, or of counsel, nor am
19   I financially or otherwise interested in the outcome
20   of this action.
21        Witness my hand and seal on this 10th day of
22   December, 2016.
23
24   My Commission Expires:      CCR 1110
     January 27, 2020.          Notary Public
25
```

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 74

1       IN THE UNITED STATES DISTRICT COURT FOR THE
            NORTHERN DISTRICT OF MISSISSIPPI
2                   ABERDEEN DIVISION

3   MICHAEL THOMPSON                     PLAINTIFF

4   VS.                    NO. 3:14cv274NBB-SAA

5   CALVIN HAMP, ET AL                   DEFENDANTS

6

7                     CERTIFICATE

8       I, SHERIFF CALVIN K. HAMP, SR., have read the

9   foregoing pages, 1-72, of the transcript of my

10  deposition given on November 29, 2016, and it is

11  true, correct and complete to the best of my

12  knowledge, recollection and belief except for the

13  list of corrections, if any, attached on a separate

14  sheet herewith.  Witness my hand, this the

15  _____ day of _____, 2016.

16

17                          _____
                            SHERIFF CALVIN K. HAMP, SR.
18                          CERTIFICATE

19      Subscribed and sworn to before me, this the

20  _____ day of _____,

21  2016.

22

23                          _____
                            Notary Public in and for the
                            County of _____
24  My Commission           State of Mississippi
    Expires: _____

25

ADVANCED COURT REPORTING
662-690-1500

Deposition of Calvin K. Hamp, Sr., taken November 29, 2016

Page 75

```
 1                    ADVANCED COURT REPORTING
                            P.O. BOX 761
 2              TUPELO, MISSISSIPPI 38802-0761

 3
                         CORRECTION LIST
 4     MICHAEL THOMPSON                      PLAINTIFF
       VS.
 5     CALVIN HAMP, ET AL                    DEFENDANTS

 6
       Federal - No. 3:14cv274NBB-SAA
 7     _____
       CAPTION
 8
       NOVEMBER 29, 2016          SHERIFF CALVIN HAMP, SR.
 9     _____
       DATE OF DEPOSITION         DEPONENT'S NAME
10
11     PAGE   LINE    CORRECTION              REASON
12     _____
13     _____
14     _____
15     _____
16     _____
17     _____
18     _____
19     _____
20     _____
21     _____
22     _____
23     _____
24                          _____
                            SHERIFF CALVIN K. HAMP, SR.
25
```

ADVANCED COURT REPORTING
662-690-1500